# STEWART *v.* MASTERSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 287. Argued April 25, 1889. — Decided May 13, 1889.

A demurrer to a bill in equity cannot introduce as its support new facts which do not appear on the face of the bill, and which must be set up by plea or answer.

Where there is matter in the bill which is properly pleaded, and is properly

ground for equitable relief, and requires an answer or a plea, a demurrer to the whole bill will be overruled.

Where a bill is taken as confessed by one of two defendants before a decree is made dismissing the bill, on demurrer, as to the other defendant, the latter can appeal from the decree, although it does not dispose of the case as to his codefendant.

IN EQUITY. Decree dismissing the bill. The case is stated in the opinion of the court.

*Mr. Charles C. Lancaster* for appellant.

*Mr. S. S. Henkle* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Western District of Texas by James Reid Stewart. The original bill was filed against James L. Tait and his wife, and Branch T. Masterson. Tait and wife demurred to the bill, among other things, for multifariousness, as did also Masterson. On a hearing, the demurrers were sustained, with leave to amend the bill. The plaintiff then filed an amended bill against Masterson and Tait. It was taken as confessed as to Tait, and an order made that the cause be proceeded in *ex parte* as to him. Masterson demurred to the amended bill, and the demurrer was sustained and the bill as against him was dismissed. The plaintiff has appealed to this court.

The allegations of the amended bill are substantially as follows: On the 10th of May, 1878, at Glasgow, Scotland, Stewart and Tait entered into a written agreement. By that agreement, Stewart's son and Tait were to proceed together to Texas, and Tait was to purchase 2560 acres of land, in such place as might seem to him most advantageous, at a price not to exceed 12 shillings per acre, title deeds to be made out and recorded in the name of Stewart, and he to authorize payment of the purchase money on delivery of the title deeds to the order of such party as might be named therein, money for improvements to be furnished by Stewart as required by Tait,

he to give receipts as acting for Stewart, and the farm to be worked on equal shares, and profits to be equally divided. between Stewart's son and Tait, the agreement to remain in force for five years from the date of purchase of the land; a further tract of 2560 acres to be purchased in the names of Tait and Stewart's son, on a credit of four years, payment to be made out of realized profits; and until such additional land should be paid for, but not exceeding five years, Stewart should not require the repayment of moneys advanced; interest to be paid for such moneys at the rate of 6 per cent per annum; Tait to do his best as to supervision and guidance of Stewart's son, and to have the management and be responsible to Stewart; the amount to be advanced by Stewart not to exceed in all £3250 sterling.

The amended bill then makes the following allegations: In pursuance of such agreement, Tait, in June, 1878, purchased for Stewart and in his name, and went into the occupancy of, and held for him as his agent, for five years, 4605 acres of land in Bexar County, Texas, known as the Gasper Flores survey No. 13, and situated within the territory of the McMullen grant, thereinafter described and bounded as set forth; Stewart paid for the land $9000, and expended in improvements, as owner, $6147.51, and thereby increased the value of the land at least $3 per acre, making the whole value of the improvements, as made by him, $19,962.51. He paid about $1000 taxes on the land. The title was from the government of Spain, which conveyed in fee to the Indians of San José Mission, land known as the McMullen grant, in the counties of Medina and Bexar. It was conveyed by the Indians to one Garza, and by him and the Indians to one John McMullen, in fee. While McMullen owned and occupied it, and in February, 1840, one Maverick, being the owner of Texas land certificate No. 276, as the assignee of Gasper Flores, the grantee of the State of Texas, located such certificate on a portion of the land within the McMullen grant, known as the Gasper Flores survey No. 13, being the identical land owned by Stewart and thereinbefore described, and afterwards procured a patent for the land and became vested with all the title of the

Republic or State of Texas thereto, and claimed survey No. 13, adversely to the title and possession of McMullen. Afterwards, McMullen conveyed the McMullen grant to one Howard, and he, in February, 1851, commenced a suit in equity, styled chancery suit No. 10, in the Circuit Court of the United States for the Western District of Texas, to remove the cloud upon his title. Maverick was made a party to that suit and appeared, and on the final hearing it was decreed that the heirs of Howard, (he having died and they having been substituted as plaintiffs,) should recover the McMullen grant from Maverick and the other defendants, and that the title of said heirs was free from all clouds, and that all patents, locations, and surveys, owned by the defendants in the suit, were void, and they were ordered to cancel the same, and the title of said heirs to the McMullen grant was adjudged to be a good title. On a reference made by said decree, a master reported that Maverick appeared to have claimed to be the owner of the Gasper Flores survey No. 13, being the land of Stewart, and that the same was situated within the limits of the McMullen grant. The master made a deed in triplicate, conveying all the interest of the heirs of McMullen to the McMullen grant, and the heirs of Howard acquired legal title to and possession of that grant, and one Castro purchased from the heirs of Howard and became the owner of said survey No. 13, and went into possession thereof, and afterwards sold the same in fee to Stewart, for $9000, and delivered possession thereof to him, in June, 1878, the deed expressing the consideration of $10,500, and being duly recorded in Bexar County, as was also the said deed to Castro. Thus, Stewart's land became and was land titled from the State, evidence of the appropriation of which was on the county records of the county of Bexar, and in the general land office of the State, according to the provisions of section 2 of article 14 of the constitution of the State. The heirs of Howard were, by virtue of said decree, put in possession of all the land in the McMullen grant claimed by the defendants in suit No. 10, and the State of Texas acquiesced in the decree, and caused the McMullen grant to be marked on the maps of the general land office

by its boundaries within the counties of Bexar and Medina, and the grant was marked on the county maps of each of those counties, by authority of the State, and the heirs of Howard and those holding under them have been required to pay state and county taxes on the land, and the State and the county of Bexar have levied taxes on Stewart's land and collected the same from him as owner thereof, ever since he purchased it, and he has ever since been in the actual possession and occupancy of the same and the improvements thereon, and thus his appropriation of the land was evidenced by the occupation of the owner or some person holding for him, under the provisions of section 2 of article 14 of the state constitution. Masterson became and was a party defendant to said suit No. 10, before the final determination of the same, as the assignee in bankruptcy of one Herndon, a defendant therein, (who had located a certificate on and taken out a patent to lands within the McMullen grant, and whose claim was a cloud on the McMullen title,) and had full knowledge of the decree and of the proceedings in suit No. 10, before and after the decree, and knowledge of the possession and title of the heirs of Howard and of Castro, and of Stewart's title, possession, and improvements, and that Tait was, during five years from June 22, 1878, holding Stewart's land and the improvements thereon as the agent of Stewart. The foregoing decree and conveyances vested in Stewart the absolute property in said 4605 acres of land, but Masterson and Tait fraudulently colluded with each other that Tait should abandon Stewart's land and all the improvements thereon and deliver the same over to Masterson for the consideration of $750, to be paid by him to Tait, with intent to cheat Stewart out of the value of said improvements and deprive him of his title to the land. Masterson, with such intent, and in contempt of said decree, and in violation of said provision of the constitution of Texas, fraudulently located and caused to be surveyed the whole of Stewart's land, as vacant and unappropriated domain of the State of Texas, by virtue of several land certificates issued by the State and owned by Masterson, and caused the surveys thereof and the field-notes of the surveys to be recorded in the

office of the county surveyor of Bexar County, with particulars set forth in the amended bill, and procured patents to issue to himself thereon to the lands described in such surveys and field-notes, covering Stewart's said land. In August, 1882, Masterson commenced an action of ejectment or trespass to try title, in the District Court of Bexar County, against Tait, to acquire possession of Stewart's said land. The suit was brought for the purpose, among other things, of furnishing a pretext for Tait to abandon Stewart's property, and, having served its purpose, it was dismissed by Masterson, who paid all the costs thereof; and Tait, in pursuance of such collusive agreement and the payment to him of $750 by Masterson, surrendered, and Masterson received occupancy of, 1280 acres of the land and a dwelling-house and improvements thereon, and pretends to hold the same as owner, and also to claim title and the right of possession to the remainder of Stewart's land, unoccupied by him, under and by virtue of Masterson's said locations and patents thereon. The amended bill tenders to Masterson the amount of the actual expenses incurred by him in paying for the certificates, surveys and patents. Tait is insolvent, and if, upon a final hearing, the title of Masterson should be decreed to be paramount to that of Stewart, the value of Stewart's improvements on the land, namely, $19,962.51, would be lost to him, unless adjudged to him against Masterson by a decree, and made a lien upon the land.

The amended bill waives an answer on oath as to all matters except those specified in six interrogatories, as to which an answer on oath is required. It prays for an accounting by Masterson as to the cost incurred by him in the purchase of his certificates, the location and running of the surveys, and the procurement of patents on the 4605 acres of land; that the title acquired by him, if any, be by a decree vested in Stewart on the payment of the amounts so expended by Masterson; that the cloud upon Stewart's title be removed, and Masterson forever barred of all interest in the land; and that Stewart be quieted in his title and possession, and be decreed to be the owner. There is an alternative prayer that, in case

the title to the 4605 acres be found to be in Masterson, then the amount of the value of the improvements made on the land be adjudged to Stewart against Masterson, and made a lien on the land; that the land be sold to satisfy the lien; and that Masterson be foreclosed and barred of all interest in the land, except the equity of redemption before sale by the payment of the amount of the lien; and for general relief.

The demurrer of Masterson purports to be a demurrer to the amended bill, and to the original bill as amended by the amended bill. It demurs thereto and to the jurisdiction of the court sitting in equity, and assigns several grounds of demurrer: (1) That the amended bill sets up substantially matters against which the court sustained the demurrer to the original bill, in that it appeared by the original bill, and cause No. 10 in equity therein referred to and stated as a part of Stewart's title and the exhibits, order and decree in cause No. 10, that Stewart's pretended title to the lands sued for is based on the so-called McMullen grant which the Supreme Court of Texas, in the case of *McMullen* v. *Hodge*, 5 Texas, and in *Howard* v. *McKenzie*, 54 Texas, declared to be vacant public domain; and the decision in *McMullen* v. *Hodge* was rendered long before Stewart purchased, and McMullen, against whom it was rendered, is a remote vendor of Stewart, and Stewart's claim is under him; and Stewart has not, by the amended bill, set up any other claim than the void one defectively set up in the original bill; and the amended bill does not contain proper allegations to entitle him to assert a claim for the value of improvements; (2) that there is a want of equity in the bills; (3) that Tait has no interest in the matters concerning which the decree is sought against Masterson, and no relief is asked against Tait, and no facts are alleged which would entitle Stewart to maintain this suit against Masterson and Tait, and there is a misjoinder of parties defendant; (4) that Stewart has a full, complete and adequate remedy at law.

We think the demurrer to the amended bill ought to have been overruled, and Masterson put to his answer thereto. It appears by the opinion of the court below, filed in deciding on the demurrer to the original bill, that the case made by

that bill against Masterson and Tait was substantially the same as the case made against them by the amended bill, and that the demurrer to the original bill was sustained on the ground of multifariousness, because, in addition, it sought an account from Tait personally, as agent or trustee of Stewart, in respect to funds entrusted by Stewart to Tait, and also prayed to have established a lien in respect thereto, in favor of Stewart, upon a homestead which it was alleged Tait had purchased for himself and his wife with such funds. The court was of opinion that Tait was a proper party to the bill with Masterson, in respect to the matters other than the accounting by Tait and that Stewart might reform his original bill and so frame it as to embrace solely the matters against Masterson and Tait relating to Stewart's title to the land in question, and the alternative claim to a right to be paid for the value of permanent improvements made upon the land, as against Masterson.

It is assigned as error by Stewart that nowhere in the original bill or in the amended bill is it admitted that the McMullen title, which Stewart is litigating in this case, is the identical McMullen title which has been at various times litigated in the courts of Texas; that the court below had no authority to take judicial notice of the identity of the grant in litigation with another grant referred to in the state reports, when this identity was not admitted in the bill demurred to; and that that court could derive knowledge of such identity only from evidence properly offered and admitted, after due allegations in a plea or answer.

It is very clear that the present demurrer introduces as its support new facts which do not appear on the face of the bill, and which must be set up by plea or answer. Story Eq. Pl. 9th ed. §§ 447, 448, 503, 647.

In addition to this, as there is matter properly pleaded in the amended bill, and properly ground for equitable relief, which requires an answer or a plea, and as the demurrer is to the whole bill, it ought to have been overruled. The case, as stated, shows there is no plain, adequate, and complete remedy at law.

As the order taking the bill as confessed by Tait, and directing that the cause be proceeded in thenceforth *ex parte* as to him, was entered before the decree was made sustaining the demurrer of Masterson and dismissing the bill as against him, that decree is final as to him, and one from which he could appeal. There was no decree from which Tait could appeal, and when the case returns to the Circuit Court a final disposition of it can be made as against Tait. He was properly made a defendant with Masterson, although no relief was prayed against him in respect of the matters in which he is alleged to have been concerned with Masterson.

> *The decree of the Circuit Court is reversed, and the case is remanded to that court, with a direction to overrule the second demurrer of Masterson, and to take such further proceedings as shall not be inconsistent with this opinion.*