O'SHAUGNESSY v. HUMES et al.

(Circuit Court, W. D. Tennessee. March 21, 1904.)

1. PARTIES—SUIT IN EQUITY BY ASSIGNEE—NECESSITY OF JOINING ASSIGNOR.
    One who has assigned all his legal and equitable interest in the subject-matter of a controversy and all rights of action, legal and equitable, with respect to such interest, is not an indispensable party to a suit in equity by the assignee to enforce the rights assigned.

¶ 1. See Assignments, vol. 4, Cent. Dig. § 215.

2. EQUITY PLEADING—SPEAKING DEMURRER.

A speaking demurrer, or one setting up facts extrinsic to the bill, will be overruled for its defect of form without considering the merits of the defense, which can only be made by plea or answer.

3. DEMURRER—QUESTIONS PRESENTED—CONSTRUCTION OF CONTRACT.

A court will not, on demurrer, construe an instrument set up in the pleading demurred to, and determine the rights of the parties thereunder, when it is obscure and ambiguous in its language, and so uncertain in meaning that it cannot be fairly interpreted without a knowledge of the surrounding facts and circumstances.

In Equity. On demurrers to bill.

Metcalf & Metcalf, Thos. B. Turley, and Frank P. Poston, for demurrer.

Greer & Greer, opposed.

HAMMOND, J. Chronologically, the averments of this bill may be stated as follows:

(1) Prior to March, 1887, the defendant Milton Humes was the attorney and managing agent of Mrs. Ada Lane, and in that relation became indebted to her for sums of money not necessary now to notice, because they are not involved in the controversy over this demurrer.

(2) March 17, 1887, he sold to his own wife, one of the other defendants, Mrs. Ellelee C. Humes, real and personal property belonging to Mrs. Lane. The real estate in Madison county, Ala., was conveyed to Mrs. Humes for a recited consideration of $25,000, and "pictures, drawings, paintings, statuary, and other personalty," amounting to $5,000. It is not understood that the money for the personal property is involved in this controversy over the demurrer. The averments of the bill concerning this transaction are meager, indeed. The deed is neither set out in its particulars, nor exhibited with the bill, and, if it has any such relation as that which is suggested in the argument to the subsequent transactions between the parties, so as to create the relation of principal debtor between Mrs. Humes and Mrs. Lane, it is only a matter of inference, and is scarcely made to appear by the specific averments of this bill. Presumably Mrs. Humes in some form, we do not know how, agreed to pay the recited consideration of $25,000, but this is only an inference to be drawn from the bare averment of the bill that the deed of conveyance recited a consideration of $25,000.

(3) The bill avers that on the 3d of August, 1887, the defendant Milton Humes informed Mrs. Lane that the balance due her from all sources in the management of her property was $30,000, and that he had invested that amount in good securities yielding 8 per cent. interest. How this information was given is not stated, but the bill states that "this instrument [whether it means the deed to Mrs. Humes or the instrument containing the information we cannot say] should have brought the said Mrs. Lane an annual income of twenty-four hundred dollars." Then the bill states that the complainant, who is Mrs. Lane's assignee, is now informed and believes that Humes never made any investment of the money, but converted the moneys realized by him to his own use, and only made remittances and disbursements on Mrs. Lane's account out of his own personal funds.

(4) The bill avers that on the 4th of September, 1887, Mrs. Humes and her husband conveyed the real estate in Alabama to one James F. O'Shaugnessy for $25,000, that this consideration was never paid, and on the 26th day of January, 1892, O'Shaugnessy and his wife "reconveyed" the property to Milton Humes. Again, this deed is not set forth in its particulars, nor is it exhibited with the bill, nor are there any averments about it in its relation to subsequent transactions. Evidently it was not a "reconveyance," for that would have required a deed to Mrs. Humes herself, while this was to her husband. No averments are made in the bill as to the payment of the consideration or any undertakings of Humes in relation thereto, either with O'Shaugnessy or with his wife, Mrs. Humes, and we know nothing from the bill as to any adjustment of that matter as between these parties. What disposition was made of the indebtedness to Mrs. Lane from Mrs. Humes which is to be inferred from the fact that the property was conveyed to the latter by Mrs. Lane's agent and attorney is not shown by the bill, and therefore it throws scarcely any light except by inference upon the subsequent transactions involved in the controversy over this demurrer. It is not to be assumed as one of these inferences, however, we should think, that Mrs. Humes, without the consent of Mrs. Lane, by this transaction denuded herself of any indebtedness which she owed to the latter because of her original purchase of Mrs. Lane's property.

(5) The bill next avers that on February 13, 1892, the defendant Milton Humes conveyed another of the lots in Alabama to one Mrs. Wells for a consideration of $6,500, and that the title to the other three lots still remains in the said Milton Humes.

(6) The bill avers that Mrs. Lane was constantly making unsuccessful efforts to secure an accounting with Milton Humes, and at last, on the 1st day of October, 1889, he and his wife, "well knowing that the money recited in the deed of conveyance to Mrs. Humes as the consideration of twenty-five thousand dollars had never been paid, delivered to her an instrument of writing, as follows:

"This instrument of writing, witnesseth: That we, the undersigned Milton Humes and his wife, Ellelee C. Humes, hereby acknowledge that we hold for Mrs. Ada Lane Twenty-five Thousand ($25,000.00) which is loaned out at 8 per cent per annum. We are to collect the interest and pay it to her as near as we can in monthly installments as called for by her.

"[Signed]                                      Milton Humes.
                                              "Ellelee C. Humes."

(7) On the 7th of March, 1896, Milton Humes, being the owner of real estate in Shelby county, described in the bill as situated on the Poplar Boulevard, and known as the "Humes Place," executed a mortgage to his wife, the defendant Ellelee C. Humes, conveying this real estate to her. The bill avers that the mortgage "recites that it is given as security to Mrs. Ellelee C. Humes on account of her signing the above-described acknowledgment of twenty-five thousand dollars indebtedness to the said Mrs. Ada Lane, and for the consideration of ten dollars in hand paid." Again, the bill gives no further particulars as to this mortgage, nor does it exhibit the same, or a copy thereof, with the bill, nor in terms make it a part of the bill, but it is referred to as being of record in the register's office of Shelby county, giving the book and

page where it is to be found. It will be noticed that the bill does not say that the mortgage was given as a security to Mrs. Humes in any particular capacity or relation to these transactions, but it simply avers that the mortgage recites that it was given as above stated in the quotation from the bill. By consent of counsel arguing this demurrer, we are permitted to turn to the brief of counsel for the complainant, where the recitals of the mortgage are more fully set forth, as follows:

"Know all men by these presents, That I, the undersigned Milton Humes, am indebted to Ada C. Lane, as evidenced by my obligation to her, which is also signed by my wife, Ellelee C. Humes,—and Whereas, I am desirous of securing my said wife from any liability by reason of her signing said note—

"Now therefore, in consideration of the premises and the sum of Ten Dollars to me in hand paid, the receipt of which is hereby acknowledged, I, the undersigned Milton Humes, do hereby bargain, sell, alien, and convey unto my said wife, Ellelee C. Humes, the following described property, to-wit:

"[Description.]

"To have and to hold the above described property, unto the said Ellelee C. Humes, her heirs and assigns forever, but nevertheless, upon the following conditions: That whenever the said Milton Humes shall pay and discharge said debt to said Ada C. Lane, then this conveyance shall become null and void, and of no effect, and the said Ellelee C. Humes shall make this conveyance satisfied on record thereof, or, re-convey the property above described to said Humes, as he may elect."

It is to be noticed that even the recitals in the mortgage are somewhat indefinite, and the whole instrument seems to be quite obscure in its language as disclosing its purpose. It recites that Milton Humes is indebted to Mrs. Lane, "as evidenced by my obligation to her, which is also signed by my wife," and in the very next clause it expressed a desire to secure his wife from any liability by reason of her signing "said note." This imperfectly fits the instrument of October 1, 1889, which is neither a note nor in the ordinary form of an obligation of indebtedness, as will be observed by turning to the copy of it contained in this statement. That document states only that "we hold for Mrs. Lane Twenty-five Thousand Dollars, which is loaned at eight per cent per annum," and in terms it seems to promise only to collect the interest, and pay it over in monthly installments. It appears, however, to be assumed by both the complainant and the defendant that this is the document referred to by the recitals of the mortgage, though that is altogether a matter of inference, rather than from any definite statements that are contained in the mortgage itself; very much like the many other inferences that are left open by this bill in its statements about these instruments so meagerly set out in it. It seems to the court that too much is left to inference by the pleading, which is not nearly so specific in its indications of the groundwork of this lawsuit as are the arguments and briefs of counsel, in which either side treats of the object and purpose of the bill, and states the inferences to be drawn from its averments, quite differently from the other. Neither agrees with the other as to the nature and character of the pleading. The complainant insists that Mrs. Humes is a principal debtor by reason of these transactions, while the defendant insists that she is only a surety, and the fact is, probably, that she may be either one or the other, so far as we have any knowledge of her relation in respect of these transactions from the averments of the bill itself, or even from the instruments which the bill

so sparsely sets out. But it is to be observed that the mortgage itself is to become null and void only when "the said Milton Humes shall pay and discharge said debt to said Ada C. Lane."

(8) The bill next avers that on the 24th of March, 1903, the defendants Humes and wife sold the Memphis property to the other defendants Cooper and wife. No consideration is stated for the deed, nor any of its particulars, except the bare fact that the deed was made and executed; but the bill avers that the preliminary negotiations and the execution of the deed itself were intended as a fraud upon the rights of Mrs. Lane and her assignee, the complainant in this case. The grounds of this alleged fraud are not very distinctly set forth, and it is based upon the averment that the complainant is informed and believes that the defendant Milton Humes could not legally convey the property which was held as security for the indebtedness of Humes and wife to Mrs. Lane, until Mrs. Lane would sign a release of whatever claim or lien she had. Therefore, in February, 1903, the said defendant Humes endeavored to secure her release, which she refused to sign until the defendant had rendered her an account, which was finally done, showing that the said defendants Milton Humes and his wife were indebted to Mrs. Lane in the sum of $31,698.88, whereupon Mrs. Lane refused to release her claim or lien upon the property, notwithstanding which Humes and his wife conveyed the property to Cooper and wife. It is alleged that this conveyance was made with the intention of not paying the debt to Mrs. Lane or her assignee, and that the conveyance "was made and contrived of fraud, covin, collusion, and guile, with the intent and purpose to delay, hinder, and defraud the said creditor of the said Milton Humes and his wife of their just and lawful debts."

(9) The bill finally alleges that Cooper and wife had actual knowledge of this indebtedness, and of the mortgage to secure it, as well as the constructive notice given by the registration of the mortgage on the records of the county, and that they took the deed with the intent to hinder, delay, and defraud Mrs. Lane and her assignee of their just debt.

The prayer of the bill is: (1) For parties and process; (2) for an accounting between the complainant and the defendants Humes and wife, so as to ascertain the amount of the indebtedness; (3) for a decree against Humes and wife for the payment of this indebtedness, principal and interest; (4) that the deed to Cooper and wife be declared to be fraudulent and void; (5) that the complainant be declared to have a valid and subsisting lien for the $25,000 and interest thereon from the 1st of October, 1889, to date, upon the property described in the mortgage, until the indebtedness is paid in full by the defendant Milton Humes and wife; (6) "that, to secure and impound said property as described within, a writ of attachment be issued by fiat of the court, and be levied on said tract of land"; (7) complainant prays for such other, further, and general relief as he may be entitled to on the facts at the hearing.

To this bill both Humes and wife and Cooper and wife demur separately, but they may be treated together. The grounds of demurrer are: (1) That Mrs. Lane is a necessary party. (2) That Mrs. Humes, being a married woman, could not be bound upon any obligation to Mrs.

Lane. (3) That by the laws of Alabama (Acts 1886–87, p. 82, § 9) it is provided that the husband and wife may contract with each other, but all contracts into which they enter are subject to the rules of law as to contracts made by and between persons standing in confidential relations, and the wife shall not, directly or indirectly, become the surety for the husband; which law was in force at the time of the execution of the obligation mentioned in this bill. (4) That the mortgage was not made to secure Mrs. Lane, but only Mrs. Humes as surety. (5) No allegation of Humes' insolvency.

The demurrers are very numerous, and present the questions sought to be raised in many forms, but they all hinge around these which have been above mentioned, and we need not consider any others at the present time. Indeed, except the first ground of demurrer—that Mrs. Lane is a necessary party—all the other grounds turn upon the coverture and alleged suretyship of Mrs. Humes. As to the first ground of demurrer, it should be definitely overruled. The assignment by Mrs. Lane to the complainant, set out in the bill, is so complete in itself that it conveys all legal and equitable interest that she had in the subject-matter of this controversy, and all rights of action, legal and equitable, which she might have to enforce that interest; and hence, under the strictest rules upon the subject of making the assignor a party to a bill in equity filed by an assignee to enforce the rights that have been assigned to him, it does not appear upon the face of the bill that Mrs. Lane is a necessary party. Possibly it may be made to appear by an answer or plea stating some of the extrinsic facts, such as have been suggested in the argument, that she is a necessary party, but it does not so appear upon the face of this bill. As it is laid down, the true principle on this subject would seem to be that in all cases where the assignment is absolute and unconditional, leaving no equitable interest whatever in the assignor, and the intent and validity of the assignment is not doubted or denied, and there is no remaining liability in the assignor to be affected by the decree, it is not necessary to make the latter a party. At most he is merely a nominal or formal party in such a case. It is a very different question whether properly he may not be made a party as a legal owner, although no decree is sought against him, for in many cases a person may be made a party, though it is not indispensable. 1 Daniel, Ch. Pr. (5th Ed.) 198, note. Also in the federal courts it is a rule that where it appears, as it does from the bill, that the absent party is out of the jurisdiction, the complainant is excused from making him a party, unless he be an indispensable party; though this rule has probably not so much force now in cases where the presence of the absent party would not oust the jurisdiction, since under the act of 1872 provision is made for bringing in absent parties by substituted service or by publication, where there is such an interest in the property within the district as to authorize that course under the act, which may be doubted on the facts stated in this bill. If the presence of the absent party would oust the jurisdiction, of course the complainant would still be excused from bringing him in, unless his presence in the suit were indispensable. Under the assignment exhibited with the bill Mrs. Lane does not appear to have remaining any interest in the real estate subject to the mortgage in controversy. At most she is only a proper par-

ty, and possibly, under the circumstances of this case, could not be brought in by the substituted service of the act of 1872, if she were formally named as a party to the bill.    Rev. St. § 738.    It seems, under the authority above cited from Daniel's Chancery Practice, that the custom is to make an assignor a party complainant where he can be so brought in, though, of course, he may be made a party defendant if deemed advisable or made necessary by the circumstances. If Mrs. Lane does not choose to become a party complainant, and did not voluntarily appear, it is probable, under the practice of the court, that she could not be compelled to become a party to this suit.    That ground of demurrer is therefore overruled.

The court is of opinion that it is neither necessary nor proper to decide the other grounds of demurrer which have been filed and argued at the bar.    They proceed upon the almost gratuitous assumption that upon the face of the bill Mrs. Humes occupies the attitude of a surety to her husband.    It may be that she is so, but it does not so appear upon the face of this bill.    It is very conveniently assumed by the defendants that she is sued as a surety, and that this is a bill to subrogate the complainant to her rights as a surety to a mortgage provided by the debtor for her benefit; but none of this appears upon the face of the bill unless it may be by an inference which the defendants choose to draw for the purpose of presenting the demurrer.    The bill is very difficult to define.    It seems to be in one aspect a bill to set aside a fraudulent conveyance made to Cooper and his wife, for the purpose of defeating Mrs. Lane's security; but, if the complainant has a mortgage to secure the debt to Mrs. Lane, and his lien inheres in that instrument by its terms, then it is quite immaterial whether Cooper and wife are fraudulent vendees or such in the utmost good faith.    Except in a very general and inferential way the bill does not appear to be a bill to foreclose such a mortgage.    It does not pray for any foreclosure and sale of the mortgaged property, but it does pray for an attachment of the property, "to secure and impound" the property by such attachment, possibly upon the theory that the bill is to set aside a fraudulent conveyance from Humes and wife to Cooper and wife.    But, after all, there is a general prayer for relief, and upon the averments of the bill it is rather to be inferred that Mrs. Humes is sought to be held as a principal debtor by these transactions than as any surety for her husband, and that it is in that relation she is treated by the complainant in the pleading.    At all events, the bill may as readily be construed as a bill for that purpose and as a bill to foreclose the mortgage made by her husband to secure her debt and his debt, as to construe it as a bill for the subrogation of the complainant to any rights of Mrs. Humes as a surety. The paper signed by Humes and his wife is not, on the face of it, a declaration of suretyship; neither does the mortgage, by its recital, contain any declaration of suretyship; and, when closely analyzed, neither of these instruments can be said upon their face to present Mrs. Humes in the attitude of a surety, and, looking at the transactions from the beginning to the end out of which the obligation and the mortgage grew, she originally occupied the attitude of the primary and principal debtor to Mrs. Lane.    The notion of her being a surety for her husband in the signing of this paper arises out of the peculiar phraseology of the

mortgage, in which it is recited that he secures her against any liability for signing the paper; but, non constat, that she signed it as a surety, and not as a principal debtor. The most that can be said is that the instruments are ambiguous, and only to be interpreted by the light of the real facts growing out of all these transactions, and that it does not appear upon the face of the bill definitely and distinctly that she is a surety. Therefore this demurrer in respect of these matters is what is known as a speaking demurrer. They state by way of defense facts that are extrinsic to the bill. As an illustration, it is stated in the demurrers that in Alabama a wife is forbidden to become a surety for her husband. That does not appear by any averment of the bill, and can only be made to appear here by our taking judicial notice of the laws of Alabama; but as it does not appear on the face of the bill or in the terms of the instrument that she is a surety, by the same law taking judicial notice of it, if she be a principal debtor, she had a right to make the contract. The dominant fact relied upon that she is a surety is one that at most is only an inference drawn by the defendants themselves from the averments of this bill. Such an inference is not properly a basis for an adjudication of the rights of the parties to this suit, and if it be true as a fact it must be set up by plea or answer as a defense to this bill. Imperfect as the bill is, it is, under our liberal method of practice, sufficiently framed, even under the general prayer, to decree a foreclosure of this mortgage if Mrs. Humes be a principal debtor, whose obligation as such has been secured by her husband. The language of her obligation is one of coequal, if not joint, obligation with her husband, and there is not the least indication from that paper that she signed it as a surety. He and she use in that paper the language of joint or coequal obligation, and not the language of suretyship. A speaking demurrer, or one making defense by setting up facts extrinsic to the bill, will always be overruled because of that infirmity in the demurrer. Stewart v. Masterson, 131 U. S. 151, 159, 9 Sup. Ct. 682, 33 L. Ed. 114; Richardson v. Loree, 94 Fed. 375, 379, 36 C. C. A. 301; 1 Bates, Fed. Eq. 210; 6 Enc. Pl. & Pr. 298; 25 Enc. L. (2d Ed.) 1161; 2 Danl. Ch. Pr. (1st Ed.) 72; 1 Danl. Ch. Pr. (5th Ed.) 587; 2 Bouv. Dic. 536. Wherefore the court, without expressing any opinion upon the questions of law that have been argued upon these demurrers, is constrained to overrule them because they do not present the questions that have been argued, and for no other reason. It will be time enough to consider these questions when they are properly raised upon the record. They cannot be considered now.

Defendants' counsel desire a more specific ruling on that ground of the demurrer which relates to the construction of the instrument secured by the mortgage, particularly that which insists that it is only a security for the interest, and not the principal of $25,000. Obviously, the instrument cannot be fairly interpreted upon the face of it, and within its own terms. It clearly belongs to that class of documents which must be construed in the light of the facts surrounding its execution, and is quite unintelligible without it. This outside light, it may be inferred, can only be shed upon it when all the facts are known at the hearing. Even the mortgage is not exhibited with the bill, and the averments about it are destitute of all particulars. They seem to assume that it

secures the $25,000 as well as the interest, and it is not impossible to conceive that the mortgage, when brought into evidence, may, by its particular language, interpret or throw light upon the instrument secured by it. We are asked by the demurrer to rule against this averment of the bill, which ordinarily is confessed by a demurrer, and declare on the language of the instrument secured that the mortgage is not as broad as the bill avers it is. If it were a plain proposition that the instrument of indebtedness itself is confined to a promise to pay the interest only, non constat that the parties might not by the mortgage itself have acknowledged an obligation for the principal debt, and secured it, as well as the interest; for it appears by the mortgage that Humes, who was the owner of the property, promised to pay and discharge his debt to Mrs. Lane, and the mortgage was to be null and void only upon his discharge of that debt; so that Mrs. Humes' relation to it may be wholly immaterial in a court of equity. She might be held to be only a trustee of the title for Mrs. Lane. We cannot tell from the bill, which is as indefinite as the instrument in controversy, as it merely avers that the mortgage "is given as security to Mrs. Humes on account of her signing the above-described acknowledgment of $25,000 indebtedness." What the language of the mortgage is we do not know, nor what the facts are about this alleged debt, except in the scant way, shown in the foregoing part of this opinion, being left as we are by the pleading mostly to inferences from barely stated averments of fact. But the inferences we are asked to draw by the defendants on this demurrer are not more satisfactory than the inferences we are asked to draw by the plaintiff on the argument from the scant averments of the bill; and the assumptions of fact by the one party are a very good set-off against the assumptions of the other on the present state of the pleadings.

The instrument of alleged indebtedness is unique in its language, if not artful, is out of the ordinary style of obligation, obscure as well as ambiguous, and altogether too uncertain in its meaning to enable any court to interpret it without knowing more about the facts. The bill does not throw much light upon it, but such as it does is not in favor of the interpretation given to the contracts by the demurrants. They may be right about their construction, but it does not satisfactorily appear to be so upon the face of the instrument nor upon the face of the bill. Therefore the question should be reserved for the hearing, as indicated in the foregoing part of this opinion.

Demurrer overruled.