BOARD OF LEVEE COM'RS OF TENSAS BASIN LEVEE DIST. v. TENSAS DELTA LAND CO., Limited.

(Circuit Court of Appeals, Fifth Circuit. April 8, 1913. On Application for Rehearing, April 12, 1913.)

No. 2,446.

1. EQUITY (§ 237*)—PLEADING—EFFECT OF FILING ANSWER AND DEMURRER—WAIVER.

Although under the old equity rules the filing of an answer at the same time as a demurrer operates as a withdrawal of the demurrer, a plaintiff, by moving to strike out the answer and agreeing to have

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the case set down for hearing on the demurrer, waives the right to insist that the demurrer was withdrawn.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 492; Dec. Dig. § 237.*

Demurrer and plea or answer to same bill and effect thereof, see note to Sage Land & Improvement Co. v. Ripley, 114 C. C. A. 346.]

**2.** EQUITY (§ 232*)—PLEADING—DEMURRER.

A demurrer addressed to the whole bill for want of equity should not be sustained, where the grounds of demurrer apply to only a part of the bill, if it appears that an equitable claim is properly alleged in other parts.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 508; Dec. Dig. § 232.*]

**3.** CANCELLATION OF INSTRUMENTS (§ 37*)—SUIT FOR CANCELLATION—PLEADING—OFFER TO RETURN CONSIDERATION.

In a suit to cancel deeds to lands for fraud, where it is alleged that defendant has sold a part of the lands for a sum largely in excess of the entire purchase price paid to plaintiff, which sum it seeks to recover, less such purchase price, an offer in the bill to return the price is not necessary.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–80; Dec. Dig. § 37.*]

**4.** LEVEES (§ 28*)—SALE OF LAND—SUIT FOR CANCELLATION OF DEEDS—SUFFICIENCY OF BILL.

Allegations of a bill *held* sufficient to state a cause of action for the cancellation for fraud of deeds of land sold by a board of levee commissioners.

[Ed. Note.—For other cases, see Levees, Cent. Dig. §§ 26, 27; Dec. Dig. § 28.*]

**5.** LIMITATION OF ACTIONS (§ 100*)—WHEN STATUTE BEGINS TO RUN—SUITS BASED ON FRAUD.

In suits in equity, where relief is sought on the ground of fraud, and the party injured remained in ignorance of the fraud without fault or want of diligence on his part, limitation does not begin to run until the fraud is discovered, although there are no special circumstances, and no effort on the part of the party committing the fraud to conceal it.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

**6.** LIMITATION OF ACTIONS (§ 100*)—SUITS BASED ON FRAUD—DISCOVERY OF FRAUD—LACHES.

In a suit in equity by a public board of levee commissioners, created by the state, to cancel deeds to lands sold by such board for fraud, complainant is not chargeable with notice of the fraud by the fact that it consisted of bribery of persons who were then officers and members of the board and its agent, nor because it did not take active measures to discover it, where the transaction was fair on its face, and there was nothing to cause suspicion, until the facts were incidentally learned by a third person, who communicated them to plaintiff.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

**7.** EQUITY (§ 247*)—AMENDMENT—FEDERAL EQUITY PRACTICE.

The federal statute allowing amendments should be liberally construed to promote trial on the merits, and where a demurrer is sustained to a bill the usual order is that plaintiff have leave to amend, although there is a discretion in the court to refuse such leave.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 520; Dec. Dig. § 247.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Louisiana; Aleck Boarman, Judge.

Suit in equity by the Board of Levee Commissioners of the Tensas Basin Levee District against the Tensas Delta Land Company, Limited. Decree for defendant, and plaintiff appeals. Reversed.

Ruffin G. Pleasant, Atty. Gen. (Harry P. Gamble and Daniel Wendling, both of New Orleans, La., on the brief), for appellant.

Edgar H. Farrar, of New Orleans, La. (Henry Bernstein, of Monroe, La., on the brief), for appellee.

Before PARDEE and SHELBY, Circuit Judges, and SHEPPARD, District Judge.

SHELBY, Circuit Judge. The main purpose of the bill in this case is to annul for fraud a sale of more than 800,000 acres of land made in November, 1898, by the plaintiff (appellant here), a corporation organized under the laws of Louisiana, for the sum of $130,000, to the defendant, an incorporated limited liability partnership organized under the laws of the state of Michigan, the members of which partnership are shown by the record to be citizens of other states than the state of Louisiana.

The averments show that there was gross fraud connected with the sale, which did not come to the knowledge of the plaintiff till the year 1909.

Before considering the controlling questions in the case, there are some matters relating to procedure, occurring before the new equity rules became effective, that require brief attention.

[1] After the present suit was brought, the defendant, on December 16, 1911, filed a demurrer to the entire bill and an answer to the entire bill. Under the federal equity rules then in force, the effect of this was that the answer was a withdrawal or abandonment of the demurrer. Crescent City, etc., Co. v. Butchers', etc., Co. (C. C.) 12 Fed. 225 (by Judges Pardee and Billings); Bryant Bros. Co. v. Robinson, 149 Fed. 321, 79 C. C. A. 259, and authorities there cited. If the case had been left in this position, the plaintiff could have filed a replication and the case would have stood for trial on its merits. But it did not choose to take that course; on the contrary, it moved to strike the answer from the files, and also agreed to have the case set down for hearing on the demurrer. This, as contended in this court by the defendant, was a waiver of the right to treat the answer as a withdrawal of the demurrer. The plaintiff, having elected and agreed to have the case set down for hearing and tried on the demurrer, cannot now be permitted to insist successfully that the demurrer was withdrawn by the filing of the answer. We must proceed, therefore, to consider the case presented by the bill and the demurrer to it.

This suit was brought October 7, 1911, by petition in a Louisiana state court, and was, by the defendant, duly removed to the District Court of the United States for the Western District of Louisiana. On motion of the defendant, an order was there made to reform the pleadings so that they would conform to the federal equity rules, and

the plaintiff asked leave that, in reforming the pleadings, it be permitted to file a supplemental amended bill, and leave to that effect was granted. The plaintiff thereupon reformed its pleading, repeating the allegations contained in the petition filed in the state court and elaborating and enlarging the same. The defendant demurred to the bill, alleging that it was without equity, and stating several specific grounds of demurrer, which will hereinafter be stated and considered.

Before the decision of the case upon the demurrer, the plaintiff, on May 6, 1912, offered to further amend its bill with the view of remedying the alleged defects pointed out by the demurrers. The court below, on May 20, 1912, made an order sustaining the demurrers and dismissing the bill with costs. The court, at the same time, ordered that the amendments tendered be "filed in the record to show what said tendered amendments are," but no formal order was made allowing the amendments; on the contrary, they were denied. In a memorandum of reasons for judgment, the judge of the District Court said:

"It is clear to me that there is no case made on the original or amended bill, and that to allow the proffered amendments would not better the case as made in this bill and amended bill. The bill must therefore be dismissed. The proffered amendments will be filed and made part of the decree, in order that, in case of appeal, the appellate court may see why this court has thus exercised the discretion given it by law to permit or to refuse a complainant the right to amend his bill."

Although there was no order allowing the amendment, the court below evidently considered the amendment, and held that, if it was allowed and the demurrers were interposed to the bill as amended, the proffered amendment making no better case, the demurrers would be sustained, and the bill, so amended, dismissed. The case has been presented in this court in the same way; that is, the question argued was whether or not the bill, if amended as offered, would have been subject to the demurrers. In the printed argument filed in this court for the defendant and appellee, it is said:

"We freely admit that, if the amendment tendered made a good bill, then the court ought to have permitted the amendments to be filed, and that this court, being informed as to what the proffered amendments were, can review the action of the court."

We are not concerned, therefore, with the case as stated by the petition in the state court, nor as stated under the order of the District Court to reform the pleading. We are concerned only with the question as to whether or not the bill, as offered to be amended May 6, 1912, before the decision of the demurrers, is subject to the demurrers which were sustained. In the following references to the bill, we refer to it as embodying the proffered amendments.

It is assigned that the court erred in sustaining each of the demurrers and in refusing to allow the amendments.

We shall proceed to consider each of the several grounds of demurrer, but not in their numerical order.

The eighth and ninth grounds are to the effect:   (a) That the de-

mand of the plaintiff to annul the deeds for fraud is barred by the prescription of one year, because it appears that the knowledge of the alleged fraud came to the plaintiff more than one year prior to the time when the suit was brought; and (b) that the averments of the bill, whereby the plaintiff attempts to avoid the operation of the prescription of one year, are insufficient in law to prevent the operation of the limitation. These grounds are not well taken. They are abandoned, as shown by the brief for the appellee, from which we quote:

"Counsel for defendant conceded in the lower court, and now concedes here, th··t the prescription of one year applies only to actions to annul judgments ·.,tained by fraud and not to actions to annul a sale for fraud."

[2] It should be noted here that the demurrer is addressed to the whole bill. There is no demurrer to any separate part of the bill. Keeping that in mind, we consider the fourth and fifth grounds of demurrer. They are to the effect: (a) That the bill is without equity, because the plaintiff sues to recover the gross amount of the sale price of certain lands, with interest, and at the same time refuses to confirm and ratify said sale; and (b) that the demand of the plaintiff to set aside said sale for lesion beyond moiety is barred, on the face of the bill, by the prescription of four years. Each of these grounds of demurrer, although they are embraced in a demurrer addressed to the whole bill, relates to only a portion of the bill. If it were true that the bill was without equity to recover the gross amount received by the defendant for the portion of the land ,which it has sold, it might still contain equity as a suit to annul the deeds for the lands which the defendant still retains. That ground of demurrer, therefore, should not be addressed to the whole bill, but only to that part of the bill to which it refers.

The demand of the plaintiff to avoid the sale for lesion beyond moiety is but one alternative claim and prayer of the bill, and if that remedy were barred, as claimed in the demurrer, by the prescription of four years, the bill might still be good as one to annul the deeds for fraud. That ground of demurrer, therefore, even if well taken to a part of the bill—if it had been so addressed—should not be sustained as a demurrer to the whole bill, if it appears that an equitable claim is properly asserted in other parts of the bill. The rule is that, if a demurrer is addressed to the whole bill when it is a good defense to a part of the bill only, it must be overruled. The objection could only be sustained when it is presented as a demurrer to part of the bill. Stewart v. Masterson, 131 U. S. 151, 158, 9 Sup. Ct. 682, 33 L. Ed. 114; Story's Equity Pleadings, § 443; 1 Foster's Federal Practice (3d Ed.) § 107; Higinbotham v. Burnet, 5 Johns. Ch. 184 (by Chancellor Kent). This rule is necessarily correct, because a chancellor would not dismiss a bill containing a just demand properly asserted because it contained another demand not well founded.

[3] The third ground of demurrer is to the effect that the bill is without equity because the plaintiff does not offer to do equity by offering to return the purchase price of the lands, with interest, and the taxes paid on the whole of the lands, and the necessary cost expended

in reserving the lands, with interest, and the necessary cost of making sales of the lands, with interest. We are of the opinion that it was not necessary to make such tender. The bill shows that the defendant has sold part of the land which was conveyed to it by the plaintiff, and the plaintiff is seeking by this suit, not only to annul the deeds to the part of the land still retained by the defendant, but also to recover more than $480,000 (less $130,000, the original purchase price), which was received by the defendant for the part of the lands which it had sold. Under the circumstances, a tender was not necessary, because the court could properly adjust the equities between the parties. State of Texas v. Snyder, 66 Tex. 687, 698, 18 S. W. 106, and cases there cited. The purpose of the rule requiring a tender in certain suits has its foundation in the purpose of courts of equity to protect all parties. Where the facts alleged show that, should the plaintiff obtain relief, the parties can be protected without the necessity of a tender, a tender need not be made. The bill contains the usual offer to do equity toward the defendant as the court may adjudge, and that is sufficient.

[4] The second ground of demurrer is that the averments of conspiracy and fraud "are so vague, general, incomplete, and indefinite that these defendants cannot be put upon their defense by any such vague and indefinite averments." Whether or not this ground of demurrer is well taken can, of course, only be answered by an examination of the bill. It would unduly lengthen this opinion to repeat in detail the averments relating to the conspiracy and fraud. We can only indicate here what is elaborately stated in the bill.

The bill first shows the creation by Act of the General Assembly of Louisiana on July 3, 1886 (Acts 1886, No. 59), of the plaintiff corporation, and of the Tensas Basin Levee District, composed of named parishes, and that the purpose of such legislation was for the raising of revenue to protect the lands therein from inundation, by the construction and maintenance of levees, and that the Governor of Louisiana was authorized to appoint from each of the parishes located in the district one competent person, and that such appointees should constitute a board of levee commissioners. The state of Louisiana was the owner of about 900,000 acres of land situated in the parishes of said levee district. It was provided that the title to these lands should pass to the board of levee commissioners of the levee district so organized under the act, with authority in the board to sell the lands for the best interest and advantage of the public, the proceeds to be used as provided by the act. The persons are named who became members of the board under the act. Joseph W. Simms was appointed by the board its land agent to find a purchaser for the lands, and in 1896 Simms made a contract with James W. Brown, engaging him to assist in finding a purchaser. It is alleged that in September, 1898, a fraudulent and collusive scheme was entered into between Brown and Simms and nine other persons, to wit, James D. Lacey, S. Wood Beal, Thomas Hume, Ransome C. Luce, T. Stewart White, Thomas Friant, John C. Rugee, Joseph J. Tucker, and Anton G. Hodenpyl, all of whom are nonresidents of the state of Louisiana,

with certain members of the board of commissioners of the Tensas levee district, and certain of its officers, agents, and employés, whose names are stated, whereby all the lands owned and situated in the district and under the control of the board of commissioners should be sold and delivered for a nominal consideration to a company or corporation to be organized for the purpose of carrying out the fraud;' that, pursuant to this agreement, the defendant company was organized under the laws of the state of Michigan by named persons, who were parties to the conspiracy; that the defendant company obtained conveyances from the levee board, pursuant to this conspiracy, of lands worth at least $500,000, for which they paid only $130,000, $30,000 thereof being paid in cash, and the remainder in three equal payments, due in one, two, and three years. To obtain these conveyances, the defendant company, or the persons who organized it, corruptly used $20,000 in cash and $18,750 of the capital stock of the defendant company. This sum and stock was given to members, officers, and agents of the levee board and to certain citizens, the purpose being to influence a sufficient number of the members of the board to vote for and to approve the sale. It is alleged that $3,000 of the cash and $3,750 of the stock in the defendant company was given to John P. Parker, the then president of the board of levee commissioners, and that $500 was paid to each of two other members of the board of levee commissioners, J. A. Hemler and R. E. Yancey, and that $7,500 in cash and stock amounting to $3,750 was paid, for the purposes aforesaid, to R. B. Blanks, who afterwards became president of the board of levee commissioners, and that J. W. Simms, the land agent of the board, received $2,500 in cash and $3,750 in stock of the defendant company.

In brief, the bill shows with elaboration that the levee board received these lands in trust for the public, and that the persons who organized and composed the defendant company obtained the lands by bribery from the board for $130,000, when they were worth $500,-.000. It requires no argument or authority to show that this constituted a fraudulent betrayal of trust on the part of the members of the board who received the bribes and who caused the conveyances to be made, and also that the conspiracy to obtain the lands in this way, and to use the money and stock for the corrupt purpose, was a gross fraud on the part of those who participated in the bribery and in the organization of the defendant company, which subsequently received the conveyances of the land. It seems to us that the facts are sufficiently alleged. The plaintiff cannot be required, and in fact would .not be permitted, to embody in the bill all of the evidence which 'it expects to offer. It is sufficient if the details of a transaction of this kind are so succinctly and clearly stated as to notify the defendant of the charges made and of the facts on which the suit is based. No more is required even in a criminal prosecution. Greater fullness of statement would tend to obscure rather than to make clear.

[5] We come now to the grounds of demurrer upon which the defendant chiefly relies. The sixth and seventh grounds are to the

effect: (a) That the demand of the plaintiff to set aside the sale for fraud is barred, on the face of the bill, by the prescription of 10 years; and (b) that the averments of the bill, whereby the plaintiff attempts to avoid the operation of the prescription of 10 years, accrued on the face of the bill, are insufficient to prevent the operation of the limitation. The bill shows that the plaintiff was first informed of the fraud on October 13, 1909. The fraud was consummated by the board of levee commissioners accepting the proposition of the agent of the defendant company to purchase the land on November 4, 1898. It therefore appears on the face of the bill that a period of 11 years, less 22 days, elapsed between the date of the consummation of the fraud and the date when the plaintiff obtained knowledge of it. The defendant's contention is that the limitation of 10 years provided by the Louisiana Civil Code—articles 2221 (2218) and 3544—is applicable to the case. It is contended by the plaintiff that the prescription of 10 years is inapplicable, because the defendant did not acquire title in good faith, and other articles of the Civil Code and cases construing them are cited and relied on. As it does not change the result of our conclusion, we shall assume, for the purpose of the decision, that the contention of the defendant is correct—that the prescription of 10 years is applicable.

One of the statutes relied on by the defendant—article 2221—provides that the limitation, in case of deception, begins to run only from the day on which the deception is discovered. The other statute on which reliance is had—article 3544—contains no provision as to when the limitation of 10 years would begin to run.

In suits in equity where relief is sought on the ground of fraud, the authorities are without conflict that, where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute of limitations will not bar relief, provided suit is brought within proper time after the discovery of the fraud. This doctrine favoring parties who seek relief against fraud goes further, and is applicable in cases where there are no affirmative acts of the guilty party in concealing the facts. Where the party injured by the fraud remains in ignorance of it without fault or want of diligence on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the plaintiff. Bailey v. Glover, 21 Wall. 342, 347, 22 L. Ed. 636. In Traer v. Clews, 115 U. S. 528, 538, 6 Sup. Ct. 155, 159 (29 L. Ed. 467), it is held, citing Mr. Justice Miller's opinion in the foregoing case, that where fraud is the foundation of the suit, and the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered or becomes known to the party suing or to those in privity with him. And it is said that "the case of Bailey v. Glover has never been overruled, doubted, or modified by this court." This doctrine rests upon general and universal principles of justice, and it has been recognized and applied by the Louisiana courts from the earliest times to the present. See Hennen's,

Breaux's, and other digests of decisions of the Louisiana Supreme Court, title "Prescription."

[6] The seventh ground of demurrer, quoted above, means that the averments of the bill are insufficient to prevent the operation of the limitation, or, in other words, that the bill shows laches or fails to show that the plaintiff exercised due diligence in the matter of discovering the fraud. This, the defendant contends, is the crucial point in the case.

To prevent the running of the prescription, it is true that the bill should show, not only that the plaintiff was ignorant of the fraud, but that it has not been guilty of laches, and has not failed to use reasonable diligence to ascertain all of the facts. As to what it is necessary to allege in the bill and to prove on the trial in reference to diligence and want of negligence to avoid the operation of the statute of limitations, every case must "depend on its own peculiar circumstances, and there would be little profit in referring to the very numerous cases to be found in the books on this subject." Stearns v. Page, 7 How. 819, 829 (12 L. Ed. 928).

We can only indicate here what are the "peculiar circumstances"— which are stated at length in the bill—tending to negative the charge of want of diligence. The plaintiff had no actual notice of the conspiracy and fraud till October 13, 1909. George Wesley Smith, an attorney, obtained the information from testimony in cases to which the plaintiff was not a party. One of the cases in which testimony was given was pending in a court in Michigan; the others in Louisiana. The plaintiff had no knowledge of, or connection with, the cases, and only knew of the testimony disclosing the fraud by receiving the information from Smith. No fact appears in the bill that would naturally excite plaintiff's suspicion and so lead to an investigation. The fraud was committed with the active connivance of the president and two members of the plaintiff board, as it was then organized. The members of the board not participating in the fraud, being in ignorance of it, are presumed to have had confidence in their fellow members. Subsequent to the consummation of the fraud, a citizen, who also received a bribe to aid in the fraud, became a member and president of the board.

In brief, it is elaborately shown by the averments of the bill that the fraud and conspiracy were of the kind that concealed themselves under cover of negotiations and acts of sale and the apparently fair and open dealings of officers apparently discharging a public trust, while in fact they were secretly perpetrating a fraud.

The members of the levee board who participated in the fraud and received the bribes, and the sales agent of the board, Simms, who also received a bribe, of course knew of the existence of the fraud, for they were participating in it. Notice to the plaintiff, or to other members of the board, is not to be presumed from the knowledge of those who participated in the fraud. Ordinarily, notice to an agent is treated as notice to the principal, because of the presumption that he will communicate the facts known to him to his principal. But, in a case like this, notice is not presumed to have been communicated;

on the contrary, the facts alleged here create the presumption that the agent and the members of the board who received the bribes did not inform the plaintiff or the other members of the board. McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590; First National Bank v. Tompkins, 57 Fed. 20, 6 C. C. A. 237; Barnes v. Gaslight Co., 27 N. J. Eq. 33, 37; Innerarity v. Merchants' National Bank, 139 Mass. 332, 1 N. E. 282, 52 Am. Rep. 710. Members of the board not participating in the fraud are presumed to have been kept in ignorance of it. It is common knowledge that transactions involving "graft" by public officials are strictly guarded in the guilty circle, and are only speedily discovered by the use of detectives and the dictograph.

When it is said that a plaintiff must use reasonable diligence to discover fraud, it does not mean that he must necessarily have used some affirmative means, or taken some active steps, or begun an investigation; for he might not have the slightest suspicion of the existence of the fraud. The rule of diligence only means that the defrauded party's ignorance must not be negligent and that he remains ignorant without fault of his own. This necessarily follows from the undoubted rule that a party defrauded is not affected by the lapse of time, or by anything done or omitted to be done, so long as he remains, without any fault of his own, in ignorance of the fraud that has been committed. 2 Pomeroy's Eq. Jur. (3d Ed.) § 917, and authorities cited in note 2.

In this case, the principal persons receiving the bribes were the president and two members of the levee board. They and the sales agent, who also received a bribe, were in positions of trust, and there is nothing in the record to show that the plaintiff, or members of the board not participating in the fraud, had any cause to suspect that they were engaged in the alleged conspiracy until the board was notified of the fraud in 1909. It is alleged that the conspiracy and the receipt of the bribes were kept secret and "locked in the minds" of the guilty parties, and that the plaintiff was kept in ignorance of it.

The fiduciary relation that existed between the plaintiff levee board and its members and its land agent, Simms, was such that the plaintiff would naturally place confidence in them, and, in view of the relationship that existed between them, we are of the opinion that the plaintiff was not charged with the duty of making an investigation or inquiry to ascertain whether, in fact, a fraud had been committed, unless it had notice, or was chargeable with notice, of the existence of some fact that would naturally excite suspicion.

This suit does not stand altogether like a suit between private parties. The plaintiff is a public corporation, charged with the management and sale of a vast area of real estate. It is not presumed that it could exercise, under the circumstances, the same degree of diligence in guarding against fraud as a private owner of real estate. United States v. Minor, 114 U. S. 233, 240, 5 Sup. Ct. 836, 29 L. Ed. 110. Unless the plaintiff's want of diligence is such as to clearly bar its right of action, the court should be reluctant to deprive it of relief on that ground, in view of the fact that the suit is by a plaintiff acting in a fiduciary capacity and suing for the benefit of the public be-

fore the rights of any third party has attached which it is necessary to imperil by the suit. A defendant, who has committed a fraud involving the corruption of persons occupying a place of trust, should not be permitted to profit by it on account of the negligence of the plaintiff, unless the facts of the case and the rules of equity inexorably require it.

We think the bill is sufficient to avoid the imputation of a want of diligence in discovering the fraud. It clearly appears that the plaintiff acted promptly after the fraud was discovered. It is averred that a suit was speedily brought in the name of the state to annul the deeds, the plaintiff being advised that it should be brought in that way; that this case was finally decided by the Supreme Court of Louisiana against the plaintiff, a majority of the judges holding that the state could not maintain such suit, but that the proper party plaintiff was the board of levee commissioners. Conforming to that opinion, the present action was instituted shortly after the final termination of the suit in the name of the state. The bill shows diligence in the prosecution of the suits to annul the deeds since the date of the discovery of the fraud.

[7] It is assigned that the court erred in refusing the plaintiff leave to amend. No question was made in the lower court, nor in this court, as to the amendment being a departure from the original bill. It was not denied that the amendment was proper; the contention and decision was that it was insufficient to confer equity. The court refused to allow it on the sole ground that, if it had been allowed, the bill would still have been without equity, and that it would have been proper to have sustained a demurrer to it as amended. The federal statute allowing amendments is liberal, and should be construed liberally to promote trials on the merits. When a demurrer is sustained to a bill, the usual order is that the plaintiff have leave to amend. It is a general rule in the federal courts that it is in the discretion of the court to allow or to refuse to allow an amendment. It is often held that this discretion will not be interfered with, except in cases of a plain abuse of it. Where it is possible to avoid it, the court should never allow justice to be defeated and wrong to triumph by a mere mistake or unskillfulness in pleading. Notwithstanding the general rule that, in the absence of abuse, the discretion of the court as to allowing amendments will not be interfered with by an appellate court, such courts have, in some instances, interfered and reversed decrees and remanded cases, with direction that the rejected amendments be allowed. Backus v. Brooks, 195 Fed. 452, 115 C. C. A. 354; Lant v. Manley, 75 Fed. 627, 635, 21 C. C. A. 457. It is not necessary to consider this question further. The refusal of the learned judge in the court below to allow the amendment was based entirely upon his view that the amendment, if made, would still leave the bill without equity, and, in effect, he sustained the demurrers to the bill as amended, and framed the decree so as to submit the amendments to the appellate court. We are of the opinion, for reasons given in the foregoing discussion, that the bill, as offered to be amended, contained equity, and was not sub-

ject to the demurrers interposed, and therefore that the amendments offered should have been allowed.

In deciding the questions raised by the demurrers, we have assumed, as required by the rule, that the averments of fact in the bill are true. If the cause comes to trial on the merits, the defendant will not be prejudiced by what we have said, should the evidence show a different state of facts from that alleged.

The decree of the District Court is reversed, and the cause remanded, with directions to allow the amendments offered, to overrule the demurrers, and to allow the defendant 20 days in which to answer, and to proceed with the case according to law and the rules in equity.

And it is so ordered.

## On Application for Rehearing.

One of the grounds upon which application for a rehearing is made is that the court erred in allowing the defendant only twenty days in which to answer. It is stated that it is impossible within that time to prepare the necessary answer. Twenty days is the time now fixed for filing an answer by the new federal equity rule 12 (198 Fed. xxii, 115 C. C. A. xxii), which time runs from the day of the service of the subpœna. The 20 days allowed by the order in this case will run from the filing of the mandate of this court in the District Court. Under rule 22 of this court, 21 days must elapse before the mandate issues. The defendant, therefore, has more than 40 days from the date of the decree of reversal by this court in which to answer the bill. Besides, the matter is under the control of the District Court, for new federal equity rule 17 (198 Fed. xxiii, 115 C. C. A. xxiii) provides that that court may enlarge the time for filing the answer, upon cause shown, on motion and affidavit. There is no reason, therefore, for changing the order of this court fixing 20 days for the filing of the answer.

The demurrer relating to the statute of limitation of four years, applicable to lesion beyond moiety, was necessarily overruled, for reasons stated in the opinion. The claim asserted in that regard was abandoned by counsel for appellant on the argument in this court. If it should hereafter be urged, any proper defense could be presented to it, under new federal equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi).

The other grounds for an application for a rehearing were all considered before rendering judgment.

The application for a rehearing is therefore denied.

NOTE.—The new federal equity rules referred to became effective February 1, 1913.