R. L. BAILEY *et al. v.* HANS WATTS REALTY COMPANY *et al.*

(No. 7397)

Submitted January 26, 1933. Decided April 4, 1933.

(Rehearing denied June 5, 1933)

*Vinson, Thompson, Meek & Scherr,* and *Bias & Lawson,* for appellants.

*George I. Neal,* for appellee Hans Watts Realty Co.

HATCHER, JUDGE:

This appeal involves the right of plaintiffs to recover special damages from defendant for preventing a sale of property.

Both parties claimed the right to the possession of the College Filling Station in Huntington, the plaintiffs as lessee and the defendant as owner and lessor. The defendant ousted plaintiff initially and held possession of the station for about nineteen months. Plaintiff prevailed finally, and then demanded of defendant in this suit, (a) compensation for the period they were ousted from the station, and (b) special damages because defendant's assertion of right to the possession of the station had prevented a sale by plaintiffs of the lease of the station and certain other property to Chapman Oil & Gas Company. The plaintiffs were awarded compensation for defendant's occupation, but were denied damages for defendant's interference with the sale. The plaintiffs appealed from that denial.

The plaintiffs proved that in September, 1925, the Chapman Company had agreed to purchase from them at the price of $15,777.42, (1) the lease (not expiring until April 6, 1931) of the College Filling Station; (2) their interest in three gasoline pumps and tanks in the city of Huntington; (3) a gasoline filling station in Ceredo; (4) the "Gasoline Bulk Plant" in the city of Kenova; and (5) their interest in a leasehold on a gasoline filling station in the city of Kenova. The Chapman Company withdrew its offer after and because of the assertion of defendant's claim to the possession of the College Station. The defendant had notice that its attitude was blocking the entire sale.

The price offered by the Chapman Company was what the five properties had cost plaintiffs on September 25, 1925. The properties were bought in lump and plaintiffs proposed to sell in lump. There is no evidence giving the separate value of the College Station in 1925. After the Chapman Company's offer was withdrawn, plaintiffs attempted to sell the five properties but without immediate success. They sold the Ceredo station and the Kenova bulk plant in 1927 at $8,750.00; they showed the amount of rentals received and expected from the other two filling stations; they set up some alleged necessary expenditures on the properties and contended that what they had received

and should receive, would fall short some $9,000.00 of making them whole on the Chapman offer with interest, plus the expenditures.

The contract between the plaintiffs and the Chapman Company called for $1,000 cash and $1,000 every four months until the remainder of the purchase price was paid. The deferred payments were to be indorsed by Floyd and M. V. Chapman, who owned the Chapman Company. Both of the Chapmans testified that the company was able financially in 1925 to have complied with the terms of purchase. The defendant proved *without contradiction,* however, that in the counties of Wayne and Cabell for the year 1925 (a) no property whatever was assessed to the company; (b) M. V. Chapman was assessed with personal property of the value of $300.00, and Floyd Chapman was assessed with none; (c) Floyd had deeds for three parcels of real estate in one of which M. V. was half owner; (d) M. V. had no other real estate; (e) the aggregate value of the three parcels was $18,000.00; (f) and there were unreleased liens against the three parcels on October 15, 1925 aggregating $17,346.04. In addition to the above land, M. V. testified that Floyd bought a lot in Chesapeake, Ohio, in either 1925 or 1926 (but would not commit himself as to the year), the purchase price of which was $9,000.00, and on which Floyd paid three or four thousand dollars in cash. M. V. said the Chapman Company had "certain assets" but failed to list or value them. Another witness referred to three filling stations which the company operated seemingly in 1925; but no witness gave an idea of the value of the operations. One of the stations was leased from month to month; another station was on one of the three parcels in the name of Floyd and its value was included in the total estimate of the three parcels ($18,-000.00). What interest the Chapman Company had in the third station does not appear. (The Chesapeake station is not included in the 1925 operations of the Chapman Company as it apparently was not in operation in September, 1925.) The testimony of the Chapmans shows that they had expected to meet most, if not all, of the deferred payments ($14,777.42 and interest) from anticipated profits of the College Station.

There was ample evidence to support the circuit court in holding that the Chapman Company did not demonstrate *that*

*it was able* under the law to meet the terms of the proposed purchase. The value of its assets was not shown, and, according to the public records, its indorsers, the two Chapmans, were practically insolvent in September, 1925. The estimate of the company's officers that the profits of the College Station would meet the deferred quarterly payments of $1,000.00 each, was mere conjecture. If the estimate were justified, the College Station lease alone had a potential value (in profits) of more than the price offered ($15,777.42) for all the properties and plaintiffs were not damaged by failure to make the sale.

If we assume that the Chapman Company was able to complete the purchase and plaintiffs were entitled to special damages, nevertheless, they were not entitled to a decretal judgment because they had not established a proper measure of damages. It appears in evidence that prices of filling stations at and around Huntington reached their peak in 1925 and 1926. Actual sales made and rentals received by plaintiffs later than 1926 on a rapidly declining market, do not afford a proper measure of damages. The correct measure would be the difference (with interest) between the price offered by the Chapman Company and the market value of the five properties at that time. 24 R. C. L. subj. Sales, sec. 386; 39 Cyc. subject Vendor and Purchaser, pp. 1992 and 2114. This difference was not shown.

The judgment of the circuit court is affirmed.

*Affirmed.*