**COOPER v. O'CONNOR, Comptroller of the Currency, et al.**

No. 7254.

United States Court of Appeals for the District of Columbia.

Decided Aug. 7, 1939.

Writ of Certiorari Denied Dec. 4, 1939.

See 60 S.Ct. 263, 84 L.Ed. ——.

208

George B. Fraser and Wade H. Cooper, both of Washington, D. C., for appellant.

Brice Clagett, George B. Springston, and Charles E. Wainwright, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and VINSON, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a decree of the District Court of the United States for the District of Columbia dismissing a bill for an accounting. The bill was filed by the appellant, the plaintiff below, in his own right as a stockholder and on behalf of depositors, creditors and stockholders of the Commercial National Bank of Washington, D. C., against the appellees, J. F. T. O'Connor, Comptroller of the Currency of the United States, F. G. Awalt, Deputy Comptroller, and George P. Barse, Counsel for the Insolvent Division of National Banks and General Counsel for the Comptroller, and against Robert C. Baldwin, Receiver of the Bank. Process was not served upon Baldwin and he did not appear. The bill stated that the defendants were sued both individually and in their official capacity, but the prayer was for judgment against them individually.

The facts charged in the bill were in substance and effect as follows: On February 27, 1933, Awalt, then Acting Comptroller, placed the Bank and its assets in the hands of Baldwin as Receiver. At that time the Bank was indebted to the Inland Waterways Corporation, the United States Shipping Board Merchant Fleet Corporation, the Government of the Canal Zone, the Treasurer of the Philippine Islands, and the Alien Property Custodian as depositors in the following amounts respectively: $482,656.57; $409,297.28; $711,622.92; $1,003,602.74; $162,298.93. Prior to the institution of the receivership the Bank had pledged as collateral and delivered to these depositors to secure the payments of their accounts bonds not specifically described. After the appointment of Baldwin as Receiver, he and the other defendants paid these accounts in full, either in cash out of the funds of the Bank or through the proceeds of sales of the pledged bonds. This payment of these accounts created a preference in favor of the depositors named, to the loss and in fraud of all other depositors and creditors of the Bank in the sum of approximately $1,000,000. Also the bonds when sold were negligently sacrificed with a consequent further loss to the depositors, creditors and stockholders of approximately $1,000,000. After the appointment of the Receiver, a suit was instituted by one Thomas Rhodes, a depositor, to recover from the depositors charged as above to have received illegal preferences, the sums paid to them. This suit named as a defendant O'Connor, as Comptroller, and was contested by him until the Supreme Court of the United States sustained the United States Court of Appeals for the District of Columbia in a decision to the effect that Rhodes had a right to maintain the suit.[1] In the meantime Baldwin, as Receiver, had commenced a suit for the recovery of the very monies sought to be recovered in the Rhodes suit; and after the decision in the Supreme Court, the defendants named in the instant case entered into a "scheme or plan" in accordance with which the Rhodes suit was "merged or consolidated" with the Receiver's suit and in accordance with which "Rhodes or his attorneys," as a result of the consolidation of the two suits and the stay or abandonment of the Rhodes suit, were paid the sum of $12,000 out of funds of the Bank. This payment was to the unlawful detriment of the creditors and depositors. The prayer was for: An accounting as to the exact amounts paid the secured depositors in cash or through sale of the bonds and for a specification of the bonds and of the amount of bonds held by each of them and of the amounts received by each from the sale of the same; a judgment against the defendants in the sum of

[1] O'Connor v. Rhodes, 1935, 65 App.D. C. 21, 79 F.2d 146; United States Fleet Corporation v. Rhodes, 1936, 297 U.S. 383, 56 S.Ct. 517, 80 L.Ed. 733.

$2,000,000, plus interest, on account of the payments of cash or the sale of the bonds; a judgment of $12,000, plus interest, on account of the payment to "Rhodes or his attorneys."

To this bill the defendants O'Connor, Awalt and Barse filed an answer which denied a part of the allegations and also set up new matter in defense. At the same time these defendants moved the trial court to consider the points of law raised in specified portions of their answer, and moved to dismiss the bill, first upon the ground that it did not state facts sufficient to constitute a cause of action, but also upon the basis of certain assertions of fact made in the motion. The trial court sustained both the motion to consider the points of law raised in the answer and also the motion to dismiss.

 It was not proper for the trial court to consider, and we cannot consider, the new matter asserted in the answer. Conway v. White, 2 Cir., 1923, 292 F. 837, 840; Krouse v. Brevard Tannin Co., 4 Cir., 1918, 249 F. 538, 548. It is only upon a plaintiff's motion to submit a case upon bill and answer that such new matter and points of law raised thereby can be considered without proof. Such a plaintiff's motion operates as a demurrer to the answer. Rhodes v. Rhodes, 1911, 36 App.D.C. 261, 267, and cases therein cited. Upon a defendant's motion to dismiss, the court may consider only the allegations of the bill. These alone, under such a motion, are to be taken as true. The trial court also could not consider, and we cannot consider, the new matter set up in the defendants' motion to dismiss the bill. To the extent that that motion contained new matter it was a "speaking demurrer." Columbian Cat Fanciers v. Koehne, 1938, 68 App.D.C. 257, 260, 96 F.2d 529, 532; cf. Stewart v. Masterson, 1889, 131 U.S. 151, 158, 9 S.Ct. 682, 33 L.Ed. 114.

 But the trial court properly sustained the motion to dismiss the bill upon the ground that it did not state facts sufficient to constitute a cause of action. In Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, we held upon the authority of numerous cases therein cited that public officers are not personally liable for mistakes of either fact or law made in the course of performing acts within the scope of their official duties. And we said concerning the meaning of scope of official duty that it is not necessary, in order that acts may be done within the scope of such duty, that they should be prescribed by statute or be specifically directed or requested by a superior officer. It is sufficient, we said, if such acts are done by an officer "in relation to matters committed by law to his control or supervision," or that they have "more or less connection with the general matters committed by law to his [the officer's] control or supervision," or that they are governed by a lawful requirement of the department under whose authority the officer is acting. And we pointed out in Cooper v. O'Connor, 105 F.2d 761, decided May 15, 1939, that the Comptroller and the receiver of a national bank, when acting within the scope of their official duties, are not subject to the general equity rule that a trustee is amenable to an accounting to his cestui que trust.

 Assuming that it was illegal for the Bank to secure the depositors named in the bill and for the defendants to make the payments and the sales of bonds resulting in the preferences charged,[2] still no cause of action is stated in respect of these transactions. It is the duty of the receiver of a national bank to realize upon the assets and pay the creditors. Rev.Stat. §§ 5234, 5236 (1878), 12 U.S.C. §§ 192, 194 (1934), 12 U.S.C.A. §§ 192, 194. Thus it appears from the face of the bill that the payments and sales were acts within the scope of the defendants' official duties. If, for lack of a statutory basis for preferring the depositors in question, the payments to them should have been ratable rather than full, the error was one of law. The use of the word "fraud" in the bill is a mere conclusional characterization of the acts of the defendants. There is no charge of actual fraud. The charge that the bonds were negligently sacrificed is not mentioned in the appellant's brief and no authority is cited in respect of it. We treat this aspect of the bill as abandoned.

 In respect of the payment of $12,000 to "Rhodes or his attorneys": The bill does

---

[2] On this point see O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146, affirmed 1936, 297 U.S. 383, 56 S.Ct. 517, 80 L. Ed. 733, sub nom. United States Fleet Corp. v. Rhodes; Inland Waterways Corp. v. Hardee, 1938, 69 App.D.C. 268, 100 F.2d 678, certiorari granted 1939, 306 U.S. 626, 59 S.Ct. 589, 83 L.Ed. 575.

not specifically charge that the act of merging the two suits and securing a stay or abandonment of the Rhodes suit and the paying of $12,000 in connection therewith was outside the scope of the defendants' duties as officials. And it does not otherwise appear from the bill that what was done was outside the scope of their duties, especially as it appears that the $12,000 was paid to a depositor or his attorney. Since no cause of action to charge a public officer personally arises unless he is acting beyond the scope of official duty, a pleader seeking to state a cause of action against such an officer must allege that he has transcended his authority.

Affirmed.