[Civ. No. 20769. Second Dist., Div. Three. June 11, 1956.]

MICHAEL WILSON et al., Appellants, v. LOEW'S IN-
CORPORATED (a Corporation) et al., Defendants;
ASSOCIATION OF MOTION PICTURE PRODUCERS,
INC. et al., Respondents.

[Civ. No. 21100. Second Dist., Div. Three. June 11, 1956.]

MICHAEL WILSON et al., Appellants, v. LOEW'S IN-
CORPORATED (a Corporation) et al., Defendants;
CLYDE DOYLE et al., Respondents.

Kenny & Morris, Thomas G. Neusom, Margolis, McTernan & Branton and Robert W. Kenny for Appellants.

Irving M. Walker, Herman F. Selvin, Loeb & Loeb, O'Melveny & Myers, Mitchell, Silberberg & Knupp, Freston & Files, Wright, Peeler & Garrett, Joseph S. Dubin and Oliver B. Schwab for Respondents in Civ. No. 20769.

Guy Richards Crump and Slate & Sawtelle for Respondents in Civ. No. 21100.

VALLÉE, J.—Appeals from two judgments of dismissal. The case is here on an amended complaint, referred to as the complaint. There are 23 plaintiffs and 23 counts. All of

the defendants except three are motion picture producers and distributors. Two of the three remaining defendants are members of the Committee on Un-American Activities of the United States House of Representatives and the third is an investigator for that Committee. A demurrer of the motion picture producers and distributors was sustained without leave to amend and judgment of dismissal entered. One of the appeals is from that judgment. Demurrers of the three remaining defendants to the amended complaint were sustained with leave to amend. Plaintiffs declined to amend and judgment of dismissal followed. The other appeal is from that judgment.

Each count of the complaint relates to only one plaintiff. The counts are identical except for personal data. A statement of the first count will suffice as a statement of the pleading as a whole. It alleges:

1. Plaintiff Wilson is by profession a motion picture writer; has had more than five years experience as a writer; has acquired a reputation for work in the motion picture industry; has won high esteem as a writer in that industry; all of which defendants at all times knew.[1]

2. The corporate defendants are engaged in the production and distribution of motion pictures. The corporate and individual defendants, other than the Committee members and the investigator, control directly and indirectly all motion picture production and distribution in the United States and all motion picture employment opportunities for actors, writers, directors, producers, and other employees in that industry.

3. Defendant members of the Committee on Un-American Activities and the investigator at all times and with respect to the matters alleged "acted both in their official capacity with relation to said House Committee on Un-American Activities and individually in non-official capacities."

4. Prior to March 1951 and continuously thereafter defendants, and each of them, agreed with each other to refuse employment to, and exclude from employment in the motion picture industry the following persons:

a. All employees and persons seeking employment who had been or thereafter were subpoenaed as witnesses before

---

[1]The allegations with respect to the other plaintiffs are identical except that those who are not writers are alleged to be actors, actresses, a story editor, a research worker, and a grip, respectively, with experience ranging from "more than 5" to "more than 25" years.

the Committee on Un-American Activities of the House of Representatives and who refused on constitutional grounds to answer questions ''concerning their political affiliations, associations and beliefs.''

b. All employees in the industry and persons seeking employment therein who were named before the Committee as Communists or who were subpoenaed to appear as witnesses before the Committee, or who were suspected of ever having been Communists or of ever having had associations with Communists, and who refused or failed to appear before the Committee and waive and surrender their constitutional rights and testify or give statements fully disclosing ''their own political affiliations, associations and beliefs and those of their family, friends, associates and acquaintances.''

c. Defendants, with the intent to prevent such employees and other persons from having or obtaining employment in the motion picture industry, maliciously and without justification undertook to and did induce and persuade each other and other employers in the industry to desist and refrain from employing and to refuse employment to all such employees and other persons.

d. All defendants, as a part of the agreement and as one of the means of effectuating it, have published and circulated throughout the entire motion picture production and exhibition fields a list containing the names of such employees and other persons with the direction and intent that they be not employed. Plaintiff contends defendants wrongfully, maliciously, and without justification or excuse have interfered with and injured the right of said employees and other persons reasonably to expect employment in the industry and to pursue their professions and occupations therein, and have prevented their employment therein.

5. On September 20, 1951, plaintiff Wilson appeared before the Committee pursuant to subpoena. He there refused to answer certain questions ''concerning his political affiliations, beliefs and associations'' basing his refusal on his constitutional rights, including the privilege against self-incrimination.

6. As a result of such refusal and by reason of the acts of and pursuant to the agreement of defendants, Wilson ever since September 20, 1951, has been and he now is refused and is excluded from employment in the industry. Therefore he will henceforth continue to find it impossible to ob-

tain employment in the profession to which he has devoted a major part of his life and energy.

7. It is plaintiff's belief that the purpose of the agreement is to limit, control, and direct the political activities of defendants' employees; to coerce and influence them through and by means of threat of discharge and loss of employment from adopting or following any course or line of political action and activity not acceptable to the Committee; to limit employment in the industry to those persons whose political beliefs are acceptable to the Committee; and to limit the production of motion pictures by the industry to those the content of which is acceptable to the Committee.

8. Plaintiff has been damaged in the sum of $1,000,000 for loss of opportunity of employment in the industry and deprivation of artistic and intellectual gratification flowing therefrom and the resulting humiliation and anguish; in the sum of $250,000 for the jeopardizing of employment opportunities in other industries because of the necessity of disclosing the reasons for his inability to obtain employment in the industry; and in the sum of $1,000,000 as punitive damages.

The allegations in respect to the appearance of all but five of the plaintiffs before the Committee are, save for dates, identical. In each instance the appearance before the Committee was after the alleged making of the agreement. As to the five who did not appear, the averments are that each was named as a Communist by a witness appearing before the Committee; that each refused to appear before the Committee to answer questions concerning his or her "political affiliations, beliefs and associations," basing such refusal on his or her constitutional rights including the privilege against self-incrimination; as a result of the acts of and pursuant to the agreement, they have been refused and excluded from employment in the industry by defendants and all other employers therein; and they will henceforth find it impossible to obtain such employment. In each instance the refusal to appear was after the making of the alleged agreement.

The prayer is for money damages of $2,250,000 on each count and for an injunction.

The amended complaint is to be implemented by the facts of which we take judicial notice. ■ In considering a demurrer to a complaint, facts judicially noticed are deemed a part of the complaint even when the pleading contains an

express allegation to the contrary.[2] ■ We take judicial notice of the proceedings and reports of the Committee on Un-American Activities.[3]. The proceedings and reports of the Committee show that each of 18 of the 23 plaintiffs was asked by the Committee whether he or she was then or ever had been a member of the Communist Party. Each refused to answer, asserting his or her constitutional privilege against self-incrimination. Each of the other five plaintiffs was stated to be a Communist by a witness before the Committee and on the same grounds refused to appear and state whether he was then or ever had been a member of the Communist Party. The refusals occurred in the course of hearings held as part of a Congressional investigation by the Committee on Un-American Activities of the House of Representatives acting within the scope of its authority into Communist infiltration of the motion picture industry,[4] for the protection of the internal security of this nation and the public disclosure of the forces that menace the United States. It thus appears, contrary to the allegations of the complaint, that the questions which the 18 plaintiffs refused to answer and that the statements which the five refused to appear and give

---

[2]*Chavez* v. *Times-Mirror Co.*, 185 Cal. 20, 23 [195 P. 666]; *Loranger* v. *Nadeau*, 215 Cal. 362, 365 [10 P.2d 63, 84 A.L.R. 1264]; *Hammell* v. *Britton*, 19 Cal.2d 72, 75 [119 P.2d 333]; *Weil* v. *Barthel*, 45 Cal.2d 835, 837 [291 P.2d 30].

[3]Code Civ. Proc., § 1875(3); *Arizona* v. *California*, 283 U.S. 423, 425 [51 S.Ct. 522, 75 L.Ed. 1154], Footnote 4; *Greeson* v. *Imperial Irr. Dist.*, (9 Cir.) 59 F.2d 529, 531; *Louisville Gas & Elec. Co.* v. *Federal Power Com.*, (6 Cir.) 129 F.2d 126, 134, cert. den. 318 U.S. 761 [63 S.Ct. 559, 87 L.Ed. 1133]; *Overfield* v. *Pennroad Corp.*, (3 Cir.) 146 F.2d 889, 898; *Stasiukevich* v. *Nicolls*, (1 Cir.) 168 F.2d 474, 479; *Osage Nation of Indians* v. *United States*, 97 F.Supp. 381, 403, cert. den. 342 U.S. 896 [72 S.Ct. 230, 96 L.Ed. 672]; *Rank* v. *Krug*, 90 F.Supp. 773, 781; *United States* v. *Aluminum Co. of America*, 1 F.R.D. 71; *Mullan* v. *State*, 114 Cal. 578, 582 [46 P. 670, 34 L.R.A. 262]; *Davis* v. *Whidden*, 117 Cal. 618, 623 [49 P. 766]; *French* v. *Senate of State of California*, 146 Cal. 604, 608 [80 P. 1031, 2 Ann.Cas. 756, 69 L.R.A. 556]; *Pacific Emp. Ins. Co.* v. *Carpenter*, 10 Cal.App.2d 592, 602 [52 P.2d 992]. Cf. *Parker* v. *James Granger, Inc.*, 4 Cal.2d 668, 677 [52 P.2d 226], cert. den. 298 U.S. 644 [56 S.Ct. 958, 80 L.Ed. 1375]; *Arnold* v. *Universal Oil Land Co.*, 45 Cal.App.2d 522, 529 [114 P.2d 408]; *El Zarape etc. Factory* v. *Plant Food Corp.*, 90 Cal.App.2d 336, 346 [203 P.2d 13].

[4]Act of August 2, 1946, c. 753, Title I, Pt. 2, § 121(q), 60 Stat. 828; Senate Doc. No. 26, 80th Congress, 1st Session; *Dennis* v. *United States*, 171 F.2d 986, 987-988 [84 App.D.C. 31], aff. 339 U.S. 162 [70 S.Ct. 519, 94 L.Ed. 734]; *Lawson* v. *United States*, (App.D.C.) 176 F.2d 49, 51-52, cert. den. 339 U.S. 934 [70 S.Ct. 663, 94 L.Ed. 1352];*Barsky* v. *United States*, (App.D.C.) 167 F.2d 241, 250, cert. den. 334 U.S. 843 [68 S.Ct. 1511, 92 L.Ed. 1767].

had nothing whatever to do with their political affiliations, associations, or beliefs but concerned their membership in "a conspiratorial and revolutionary junta"[5] one of whose objectives is the overthrow of our government by force and violence,[6] a malignant force which menaces the very existence of the government. It also necessarily appears, contrary to allegations of the complaint, that the purpose of the agreement was not to limit, or control, or direct the political activities of defendants' employees or to coerce them from following any course of political action or to limit employment in the industry to those persons whose political beliefs are acceptable to the Committee. Nor was the investigation into the political beliefs of anyone. The allegations of the complaint in these respects are misleading and evasive. ■ The word "political" implies "orderly conduct of government, not revolution." (*Lockheed Aircraft Corp.* v. *Superior Court*, 28 Cal.2d 481, 485 [171 P.2d 21, 166 A.L.R. 701].)

### *The Case Against the Motion Picture Producers and Distributors.*

The complaint sounds in tort. ■ To state a cause of action facts must be alleged showing that some legally protected interest of plaintiffs has been injured. (*MacLeo'd* v. *Fox West Coast T. Corp.*, 10 Cal.2d 383, 386 [74 P.2d 276]; *Stryker* v. *Republic Pictures Corp.*, 108 Cal.App.2d 191,

---

[5]Concurring opinion of Mr. Justice Jackson, *American Communications Assn.* v. *Douds*, 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925].

[6]*Menace of Communism*, Senate Doc. No. 26, 80th Congress, 1st Session; *Report of the Communist Party of the United States as an Advocate of Overthrow of Government by Force and Violence*, House Report No. 1920, 80th Congress, 2d Session; House Doc. No. 251, 83d Congress, 2d Session, 100 Congressional Record 80; *Communism in Action*, House Doc. No. 754, 79th Congress, 2d Session; Labor Management Relations Act, 1947, § 1 et seq., 29 U.S.C.A. Supp. § 159(h), *American Communications Assn.* v. *Douds*, 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925]; Internal Security Act of 1950, § 1 et seq., 50 U.S.C.A. § 781 et seq.; Communist Control Act of 1954, § 1 et seq., 50 U.S.C.A. Supp. § 841 et seq.; Government Code, § 1027.5; *National L.R. Bd.* v. *Highland Park. Mfg. Co.*, 341 U.S. 322 [71 S.Ct. 758, 95 L.Ed. 969]; concurring opinion of Mr. Justice Jackon in *Dennis* v. *United States*, 341 U.S. 494, 564-565 [71 S.Ct. 857, 95 L.Ed. 1137, 1181]; *Galvan* v. *Press*, 347 U.S. 522, 529 [74 S.Ct. 737, 98 L.Ed. 911]; *United States* v. *Rosenberg*, (2 Cir.) 195 F.2d 583, cert. den. 344 U.S. 838 [73 S.Ct. 20, 97 L.Ed. 652]; *National Maritime Union of America* v. *Herzog*, 78 F.Supp. 146, aff. 334 U.S. 854 [68 S.Ct. 1529, 92 L.Ed. 1776]; *Lawson* v. *United States*, (App.D.C.) 176 F.2d 49, cert. den. 339 U.S. 934 [70 S.Ct. 663, 94 L.Ed. 1352]; *United States* v. *Dennis*, (2 Cir.) 183 F.2d 201, 212-213, aff. 341 U.S. 494 [71 S.Ct. 857, 95 L.Ed. 1137]; *Barsky* v. *United States*, (App.D.C.) 167 F.2d 241, 247, cert. den. 334 U.S. 843 [68 S.Ct. 1511,

195 [238 P.2d 670].)  ▮  The complaint does not allege any present or existing contract or employment of any one of plaintiffs. The cause of action attempted to be alleged is obviously one for wrongful interference with future or prospective contract or business relations. In effect it is alleged the motion picture producers and distributors combined and agreed to make it a condition of employment in the motion picture industry that the person shall not have been subpoenaed as a witness before the Committee and have refused on constitutional grounds to answer, not questions concerning his political affiliations, activities, or beliefs, but whether he is or ever has been a member of the Communist Party, or that the person was named before the Committee as a Communist and had refused on constitutional grounds to appear before the Committee to answer questions concerning his Communist affiliations, beliefs, and associations. The specific injury of which plaintiffs complain is the loss or prevention of future or prospective employment in the motion picture industry. To state facts sufficient to constitute a cause of action for such loss or prevention of employment, it must be averred that at the time of the alleged tort there was a certain or definite prospect that plaintiffs would obtain it.

▮  The general rule is that before recovery can be had for interference with and loss of a future or prospective contract or business relationship, it must appear that such contract or relationship would otherwise have been entered into. (Cases collected 9 A.L.R.2d 228, 256-257.) In *Campbell* v. *Rayburn*, 129 Cal.App.2d 232 [276 P.2d 671], the complaint alleged: the plaintiff wrote a letter to the attorney general describing gambling activities in Riverside County;

---

92 L.Ed. 1767]; *Daniman* v. *Board of Education*, 306 N.Y. 532, 540-541 [119 N.E.2d 373, 379]; *People* v. *Chambers*, 22 Cal.App.2d 687, 709-713 [72 P.2d 746]; 37 Georgetown L.J. 297. Said Judge Learned Hand in *United States* v. *Dennis, supra*, (183 F.2d 212): "The American Communist Party, of which the defendants are the controlling spirits, is a highly articulated, well contrived, far spread organization, numbering thousands of adherents, rigidly and ruthlessly disciplined, many of whom are infused with a passionate Utopian faith that is to redeem mankind. It has its Founder, its apostles, its sacred texts—perhaps even its martyrs. It seeks converts far and wide by an extensive system of schooling, demanding of all an inflexible doctrinal orthodoxy. The violent capture of all existing governments is one article of the creed of that faith, which abjures the possibility of success by lawful means. That article, which is a common-place among initiates, is a part of the homiletics for novitiates, although, so far as conveniently it can be, it is covered by an innocent terminology, designed to prevent its disclosure. Our democracy, like any other, must meet that faith and that creed on the merits, or it will perish; and we must not flinch at the challenge."

the attorney general advised the plaintiff that the letter had been forwarded to the defendant sheriff of Riverside County for attention and appropriate action; the defendant sheriff induced or otherwise caused two named gamblers who owned property in Palm Springs not to rent the plaintiff office space for the purpose of carrying on his business as a real estate broker; one of the named gamblers told the plaintiff he would not "give the plaintiff standing room"; and this same gambler had influenced his friends not to rent office space to the plaintiff, thus forcing him to conduct his business from his home. Demurrer was sustained without leave. Saying there was an attempt to state a cause of action for alleged wrongful interference with prospective contractual relations, the court on review held (p. 234):

"[N]o facts are alleged with respect to whether such accommodations would otherwise have been available on terms satisfactory to the plaintiff, the availability or lack of accommodations other than those referred to, or facts showing that the plaintiff had any reasonable expectation of economic advantage which would otherwise have accrued to him, and no facts are alleged tending to show the nature or amount of any damage to the plaintiff.

"The general principles applicable here have been applied in decisions in other states." The court then quoted with approval from *Goldman* v. *Feinberg*, 130 Conn. 671 [37 A.2d 355]; *Union Car Advertising Co.* v. *Collier*, 263 N.Y. 386 [189 N.E. 463], and *Debnam* v. *Simonson*, 124 Md. 354 [92 A. 782]. The judgment was affirmed.

In *Goldman* v. *Feinberg*, 130 Conn. 671 [37 A.2d 355], quoted from in the Campbell case, one of the defendants requested the plaintiff, a real estate broker, to show him some houses which were for sale. The plaintiff did so over a period of seven months but to no avail. Among the homes was one which the plaintiff saw on a public listing issued by a bank, the list price for which was stated to be the irreducible minimum. At the defendant's request the plaintiff inquired of the bank if the price could be lowered and was told it could not. He did not inform the bank he was negotiating with the defendant. Later the bank sold the house to the defendant and paid the latter's father (also a defendant) a commission. The father had been present when the plaintiff showed the house to the son. The plaintiff's theory was that the defendants had conspired fraudulently to represent to the bank that the father was the procuring broker, thus depriving the

plaintiff of a commission he would otherwise have been able to earn. The question as stated by the court was "whether the plaintiff, in order to make out a cause of action, must prove that he would have made a profit except for the unlawful interference with his business by the defendants." The court stated that in Connecticut a cause of action for wrongful interference with business relations is recognized not only in respect to existing contracts but also as to one's right to pursue his lawful occupation or business and concluded (37 A.2d 356):

"It does not follow from this, however, that a plaintiff may recover for an interference with a mere possibility of his making a profit. On the contrary, wherever such a cause of action as this is recognized, it is held that the tort is not complete unless there has been actual damage suffered. Pollock, Torts, 14th Ed., p. 441; Winfield, Law of Tort, 2d Ed., p. 643; Prosser, Torts, p. 1016 et seq. To put the same thing in another way, it is essential to a cause of action for unlawful interference with business that it appear that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit. [Citations.] In *Lewis* v. *Bloede, supra,* the Circuit Court of Appeals says (202 F. at p. 17 [120 C.C.A. 335]): 'When the parties have entered into a contract, the terms of which are fixed, the plaintiff is only required to show the malicious interference and the damage proximately resulting; whereas, if the ground of complaint is that he was about to make a contract, he is required to go further and show that he was not only "about to," but would, but for the malicious interference of the defendants, have entered into the contract.' "

In *Union Car Advertising Co.* v. *Collier,* 263 N.Y. 386 [189 N.E. 463], also quoted from in the Campbell case, the plaintiff was one of two bidders on a proposal to lease advertising space in the cars and platforms of an elevated railway. The plaintiff's bid offered the higher rental of the two. The negotiations with the lower bidder had proceeded to a point which made it likely, if not certain, that the plaintiff would get the contract on which it was bidding. The railway company awarded the contract to the defendants after changes in terms, on which the plaintiff had not been given an opportunity to make a proposal. The plaintiff's contention was that the result came about from the defendants' wrongful interference. The interference consisted of misrepresentations as to

the plaintiff's business ability and financial integrity; the bringing of political and economic pressure on the railway's trustees; and the defendants' indemnification of the railway from loss resulting from lawsuits arising out of rejection of the plaintiff's bid. The jury was instructed that the plaintiff could recover if the defendants' acts had prevented the railway company "from entering with him into a contract which it is reasonably certain would have been made but for such interference." The judgment was for the plaintiff. Reversing, the Court of Appeals said (189 N.E. 469):

"[Referring to the quoted instruction] If these words mean anything less than 'would have received,' we think they go too far. A cause of action exists where an executed contract is broken by a third person's unlawful interference. [Citation.] A cause of action has also been recognized where a party *would* have received a contract but for the malicious, fraudulent, and deceitful acts of a third party, such, for instance, as materially lying about him. [Citations.] There must be some certainty that the plaintiff would have gotten the contract but for the fraud. This cannot be left to surmise or speculation. The courts rightfully extended the arm of the law to reach one who deliberately interfered with an executed contract [citation], since which time they have gone a step further and mulcted in damages him who does the same thing to one who *would* have received such a contract but for the illegal interference. [Citations.] The courts will be a little slow in permitting juries to speculate upon what a competitor had reason to expect or might reasonably suppose would happen. The expressions 'reasonable expectation' or 'reasonably certain' may not be as precise as *'would* have received,' and we think the latter words are preferable."

In *Debnam* v. *Simonson*, 124 Md. 354 [92 A. 782], also quoted from in the Campbell case and cited with approval in *Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33, 36 [118 P.2d 631], the plaintiff devised a plan to buy certain land and build an apartment building thereon. He disclosed his project in confidence to one of the defendants who was an architect and entered into a contract with the latter to prepare the plans and specifications. He also entered into contracts for labor, materials, and financing, and was about to enter into a contract for the land. At that time the defendants, conspiring together, acquired the land for themselves, thus preventing the plaintiff from consummating his proposed pur-

chase and also preventing his performance of the other contracts into which he had entered. A demurrer to the complaint was sustained. The Maryland Court of Appeals held (92 A. 783) :

"The mere fact that the plaintiff has suffered damage or has lost an opportunity to profit financially because of his failure to consummate his plans owing to the purchase of said lot of land by the defendants does not in itself give him the right of recovery from the defendants for the damage sustained by him. The act must be of such a character as to create an actionable wrong before the right of recovery against the defendants exists, and, to create an actionable wrong, the legal rights of the plaintiff must in some way be invaded. There must be a violation of a legal right committed knowingly to create a cause of action. . . .

"[92 A. 784.] [T]his declaration is also defective because it does not allege with sufficient clearness, if at all, that, but for the alleged interference of the defendants, the plaintiff would have become the purchaser of the property, and would have succeeded in consummating his alleged contemplated plans or project. Such an allegation is necessary. Before he can recover it must be shown that, but for that interference, the purchase would have been made and his plans consummated."[7]

██ The complaint in the case at bar is devoid of any allegation of fact that any contract or relationship would have been entered into between any one of plaintiffs and any one of defendant motion picture producers and distributors or with anyone in the motion picture industry but for the alleged agreement. There is no factual showing of denial of employment. There is no allegation that at the time the agreement was made, or at any time thereafter, any one of plaintiffs was an employee of any one of the defendants or had any reasonable prospect of becoming such; or that any one of them was, or is, or had any prospect of being a producer of motion pictures. There is not even an allegation that there were any negotiations pending or in progress between any one of plaintiffs and any one of defendants or with anyone in the industry, or that any plaintiff was seeking employment in the industry at the time of the alleged tortious

---

[7]And see *Hundley* v. *Louisville & N.R. Co.*, 105 Ky. 162 [48 S.W. 429, 431, 88 Am.St.Rep. 298, 63 L.R.A. 289]; *Bailey* v. *Hans Watts Realty Co.*, 113 W.Va. 739 [169 S.E. 404]; *Celli & Del Papa* v. *Galveston Brewing Co.*, (Tex.Com.App.) 227 S.W. 941, 943; *Payne* v. *Gebhard*, (Tex.Civ.App.) 136 S.W. 1118, 1120; *Harnick* v. *Avrum Realty Corp.*, 248 App.Div. 385 [288 N.Y.S. 256].

interference. There is no allegation that at any time after the making of the agreement any one of plaintiffs requested employment from any one of defendants or from anyone in the motion picture industry. It is not alleged that but for defendants' alleged interference any one of plaintiffs would, or even probably or possibly would, have been employed in the industry. At the oral argument counsel for plaintiffs conceded it was not alleged "that individual plaintiffs did apply for work and were denied the right to work."

So far as appears, the last efforts of plaintiffs to obtain employment may have occurred years before the agreement. All that is alleged is that at some unspecified time prior to the agreement, they had been so employed. When and why that employment was terminated is not alleged. Since the employment terminated some time before the agreement, in the absence of contrary allegation the inference necessarily is that the termination was the result of facts wholly disconnected from the agreement and that those facts, whatever they may have been, still are effective. It cannot be inferred from the alleged fact that at some unspecified time prior to the agreement plaintiffs were employed in the motion picture industry, they have not obtained employment since they invoked their constitutional privilege solely because of that fact.

There is an entire absence of factual allegation showing that any legally protected interest of plaintiffs has been interfered with. Neither an existing nor a prospective contract or business relationship is alleged. And there is nothing in the pleading from which it may be inferred that any prospective contract or business relationship has been interfered with by any wrongful act of defendants. The most that is alleged is a hope or expectation of employment. The complaint does not state facts sufficient to constitute a cause of action.

*Bigelow* v. *RKO Radio Pictures*, 327 U.S. 251 [66 S.Ct. 574, 90 L.Ed. 652] and *Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34 [172 P.2d 867], cited by plaintiffs, are not apposite. In Bigelow, a suit for an injunction and damages for violation of the Sherman and Clayton Acts, the sole question was, as stated by the court, "whether the evidence of damage [was] sufficient to support the verdict" for plaintiff. In Speegle the complaint alleged interference with existing contracts.

Plaintiffs argue they should have been permitted to amend. One of the grounds of defendants' demurrer to the original complaint was that no cause of action was stated because of the absence of any allegation to the effect that an existing or prospective contract or business relationship had been interfered with.[8] The demurrer was sustained with leave. Plaintiffs then filed the complaint now before us. Plaintiffs amended only perfunctorily. For all practical purposes the original and the amended complaint are identical. No curative effort at all was exerted though opportunity was given. We must assume that plaintiffs have stated their cases as strongly as it was possible for them to do. (*Faulkner* v. *California Toll Bridge Authority*, 40 Cal.2d 317, 328 [253 P.2d 659].)

■ Having declined to avail themselves of leave to amend in the particular which defendants specifically pointed out to them, plaintiffs must "stand upon their pleading as against all grounds and if the complaint is objectionable upon any ground the judgment of dismissal must be affirmed. [Citations.] Upon appeal from a judgment rendered after refusal to amend a complaint to which a demurrer has been sustained, it must be presumed that the pleader has stated his case as strongly as it can be stated in his favor and all ambiguities and uncertainties must be resolved against him." (*Metzenbaum* v. *Metzenbaum*, 86 Cal.App.2d 750, 752 [195 P.2d 492].) Plaintiffs evidenced their satisfaction with the pleading and their willingness to stand or fall on it in its present form. The court did not err in sustaining the demurrer of the motion picture producers and distributors without leave to amend.

In view of our conclusion, we do not reach other points argued by counsel.

---

[8]In points and authorities filed in support of their demurrer to the original complaint, defendants said: "The complaint does not state facts sufficient to constitute a cause of action for interference with business relations. No existing contract between plaintiffs and any of the defendants is alleged. Consequently, there must be shown a reasonable probability that, but for the alleged interference, business relations between the parties would have been entered into. It is not enough that plaintiffs hoped or even expected that such relations might eventuate, the fact that they would have eventuated must appear.

" 'Before recovery can be had for interference with and loss of a prospective business relationship or contract, it is held that it must appear that such relationship or contract would otherwise have been entered into.'

"*Annotation*, 9 A.L.R.2d 256, 257, and cases there cited."

### The Case Against the Members of the Committee and the Investigator

The demurrers of these defendants were sustained with leave to amend. Plaintiffs declined to amend. As the complaint stands, it alleges these defendants entered into the agreement. For the reasons stated in considering the complaint as against the other defendants, it does not state facts sufficient to constitute a cause of action against the members of the Committee or the investigator. The complaint avers that with respect to all matters alleged these defendants "acted both in their official capacity with relation to said House Committee on Un-American Activities and individually in non-official capacities." These defendants argue they cannot be sued for the same acts both in their official capacities and in their personal capacities. In view of what we have said it is unnecessary to decide the point.[9]

The judgments are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied July 11, 1956, and appellants' petition for a hearing by the Supreme Court was denied August 8, 1956. Carter, J., was of the opinion that the petition should be granted.

---

[9] See *Laughlin* v. *Rosenman*, (App.D.C.) 163 F.2d 838, 843; *Cooper* v. *O'Connor*, 107 F.2d 207, 210 [71 App.D.C. 6]; *Reed* v. *Molony*, 38 Cal.App.2d 405, 411 [101 P.2d 175]; 67 C.J.S. 417, § 125.