[Civ. No. 1424. Fifth Dist. Jan. 31, 1972.]

ALEJANDRO LAREZ et al., Plaintiffs and Appellants, v.
JAMES OBERTI et al., Defendants and Respondents.

## COUNSEL

Carlos Ynostroza, A. Keith Lesar, Stephen J. Herzberg, Fred J. Hiestand and Gene Livingston for Plaintiffs and Appellants.

Parichan & Krebs, Sherwood Green and Denslow Green for Defendants and Respondents.

## OPINION

**BROWN (G.A.), J.**—The plaintiffs are farm workers in Madera and Fresno Counties. The defendant James Oberti is vice president of Oberti Olive Company, a large olive grower in Fresno County; the defendants Jesus Chavana and Tomas Chavana are bonded labor contractors; the defendant Ernesto Yanez is the bookkeeper for the Chavanas.

This class action was commenced by plaintiffs on behalf of themselves and other farm workers similarly situated against defendants, whose opera-

tions are conducted in Madera and Fresno Counties. They seek relief by way of an injunction to prohibit the defendants' employment of any non-citizen not legally entitled to employment in the United States and to require the defendants prior to employment of farm workers to make all future potential employees furnish convincing proof of their eligibility for employment. They also seek actual damages in an unstated amount and punitive damages in the sum of $100,000. The actual damages are alleged to consist of the aggregate amount of the total number of hours of employment of illegal aliens from July 1968 to the present, multiplied by the prevailing wage for comparable work paid by employers not hiring wetbacks.[1]

In substance the complaint alleges that the defendants wilfully and knowingly and in violation of the federal Immigration and Nationality Act (8 U.S.C. 1101 et seq.) induced persons to enter the United States in violation of that act, concealed, harbored and sheltered the illegal aliens from detection and employed such illegal aliens at lower wages in competition with domestic workers. It is stated that at least 20 percent of the work force in the areas mentioned consists of such workers, which has resulted in the depression of domestic farm workers' wages and working conditions, the creation of excessive unemployment among farm workers and farm workers being unnecessarily dependent upon welfare.

The relief sought finds its base upon three primary theories: (1) That defendants' conduct amounts to unfair and unlawful competition within the concept of that term as used in Civil Code section 3369[2] and, therefore,

---

[1]"In common parlance, Mexican nationals who enter the United States illegally are called *wetbacks* or *alambristas.* The term *wetback* originated in the circumstance that many swim or wade across the Rio Grande River to enter the United States." (*Diaz* v. *Kay-Dix Ranch* (1970) 9 Cal.App.3d 588, 590, fn. 1 [88 Cal.Rptr. 443].)

[2]Civil Code section 3369 provides as follows:

"1. Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or unfair competition.

"2. Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction.

"3. As used in this section, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, untrue or misleading advertising and any act denounced by Business and Professions Code Sections 17500 to 17535, inclusive.

"4. As used in this section, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons.

"5. Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney in this State in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public."

is enjoinable under that section; (2) that under traditional equity jurisprudence plaintiffs are entitled to relief as they are being deprived of their right to pursue their lawful employment; (3) the violation of the federal Immigration and Nationality Act by the defendants creates an implied private civil remedy in plaintiffs though that act does not expressly confer such a federal right.

For the purpose of this review we must assume that the material allegations of the complaint are true (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]); however, if the ruling of the trial court is correct in law, it will not be disturbed on appeal, whatever the reasons given by the lower court therefor, even if those reasons should be incorrect (*Yarrow* v. *State of California* (1960) 53 Cal.2d 427, 438 [2 Cal.Rptr. 137, 348 P.2d 687]; *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117]).

We do not reach the question as to whether plaintiffs have found a judicially cognizable basis upon which they may seek injunctive relief as we are of the opinion that, assuming such grounds do exist, the remedy should be denied upon the ground that injunctive intervention is an extraordinary remedy, available only in appropriate cases, and that by reason of certain considerations of expediency and policy which control and limit the exercise of equity jurisdiction, relief herein should be denied.
". . . Wherever a right exists or is created, by contract, by the ownership of property or otherwise, cognizable by law, *a violation of that right will be prohibited,* unless there are other considerations of policy or expediency which forbid a resort to this prohibitive remedy. *The restraining power of equity extends, therefore, through the whole range of rights and duties which are recognized by the law, and would be applied to every case of intended violation, were it not for certain reasons of expediency and policy which control and limit its exercise."* (4 Pomeroy's Equity Jurisprudence (5th ed.) § 1338, p. 935.)

This question has been authoritatively dealt with in the case of *Diaz* v. *Kay-Dix Ranch* (1970) 9 Cal.App.3d 588 [88 Cal.Rptr. 443] (pet. for hg. by the Supreme Court den.). In all material respects the *Diaz* case is the same as the one at bench, except that it did not seek relief by way of damages. In that case, which was one for injunctive relief only, the court denied relief to plaintiffs in the identical position of those now before the court. The decision turned upon policy considerations and the application of a balancing of convenience, a doctrine of equity. The court in the course of the opinion said: "In determining the availability of injunctive relief, the court must consider the interests of third persons and of the general public. [Citation.] Consideration of redress against a tortious

interference with livelihood requires a similar balancing of competing social and individual interests. [Citation.] Thus, whatever the legal theory underlying the injunction, the court must compare the effects of granting and withholding it and, in that connection, consider the comparative availability and advisability of other forms of amelioration." (At pp. 592-593.)

"A third factor, the comparative efficacy of federal action, tips the scales against injunctive relief.

"The federal government could, if it would, reduce the flow of illegal entrants to a trickle or virtually dry it up. Rationalization of social security procedures would impede if not bar their access to the employment market. A paradox of this lawsuit is plaintiff's discerned need for a decree compelling inquiry by California farm operators when an agency of the federal government—supplied with an apparatus of offices, staff and computerized equipment—is unwilling or unable to conduct that inquiry. Plaintiffs seek the aid of equity because the national government has breached the commitment implied by national immigration policy. It is more orderly, more effectual, less burdensome to the affected interests, that the national government redeem its commitment. Thus the court of equity withholds its aid." (At p. 599.) (Accord *Cobos* v. *Mello-dy Ranch* (1971) 20 Cal.App.3d 947, 950 [98 Cal.Rptr. 131].)

Since the decision in the above cases, Labor Code section 2805 has been enacted (Stats. 1971, ch. 1442, § 1, p. 947).[3] That section makes it a criminal offense for an employer to knowingly employ an alien if such employment would have an adverse effect on lawful resident workers. Apparently it also contemplates a cause of action for damages (see § 2805, subd. (c)). It appears that this legislation will afford plaintiffs relief from future acts such as those complained of in this action, which is a consideration that the court may assess in denying equitable relief (*Loma Portal Civic Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 588-589 [39 Cal.Rptr. 708, 394 P.2d 548]; *Diaz* v. *Kay-Dix Ranch, supra,* 9 Cal. App.3d at p. 592).

We add further that, in our opinion, the impracticability of drafting, supervising and enforcing an injunctive order in this case and the plethora of

[3]"2805. (a) No employer shall knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers.

"(b) A person found guilty of a violation of subdivision (a) is punishable by a fine of not less than two hundred dollars ($200) nor more than five hundred dollars ($500) for each offense.

"(c) The foregoing provisions shall not be a bar to civil action against the employer based upon violation of subdivision (a)."

cases it would undoubtedly spawn is a factor to consider in determining the appropriateness of injunctive relief (Rest., Torts, § 943). The courts are ill-equipped to deal with that task.

■ Appellants assert that they have a private cause of action for damages implied from the provisions of the federal Immigration and Nationality Act of 1952 (8 U.S.C. 1101 et seq.). That act establishes a comprehensive system of controls over the admission of foreign nationals as workers in this country and prohibits anyone from: (1) Directly or indirectly inducing an alien to enter illegally (8 U.S.C. § 1324, subd. (a) (4)); (2) knowingly transporting an illegal entrant within the United States (8 U.S.C. § 1324, subd. (a) (2)); or (3) concealing, harboring or shielding such an alien from detection (8 U.S.C. § 1324, subd. (a) (3)). The act provides that ". . . employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring."

The act provides that one found in violation of these provisions shall be guilty of a felony and may be punished by a fine not to exceed $2,000 or by imprisonment for a term not exceeding five years or both. It does not expressly provide a private remedy for its violation. (See also 8 U.S.C. §§ 1327, 1328.)

California courts have implied civil remedies from violation of state public policy statutes (*Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69, 74 [86 Cal.Rptr. 401]) and the federal courts have fashioned private civil remedies from federal legislation or from the Constitution where there has been no express provision for such civil procedures (*Bivens* v. *Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388 [29 L.Ed.2d 619, 91 S.Ct. 1999]; *J. I. Case Co.* v. *Borak* (1964) 377 U.S. 426 [12 L.Ed.2d 423, 84 S.Ct. 1555]; *Wyandotte Co.* v. *United States* (1967) 389 U.S. 191 [19 L.Ed.2d 407, 88 S.Ct. 379]; *Textile Workers* v. *Lincoln Mills* (1957) 353 U.S. 448 [1 L.Ed.2d 972, 77 S.Ct. 912]; *Texas & Pacific Ry. Co.* v. *Rigsby* (1916) 241 U.S. 33 [60 L.Ed. 874, 36 S.Ct. 482]; *Gomez* v. *Florida State Employment Service* (5th Cir. 1969) 417 F.2d 569; Note, *Implying Civil Remedies from Federal Regulatory Statutes* (1963) 77 Harv. L. Rev. 285).

However, we have found no case, and counsel have cited none, wherein a state court has carved out the form, content and bounds of such a remedy from a federal statute when the statute is totally silent on the subject. On the contrary, the language of the federal cases would seem to direct that the form, nature and perimeters of the federal right are to be forged and defined by the federal courts (*Cobos* v. *Mello-dy Ranch, supra*, 20 Cal. App.3d 947, 950-951). "Absent some express authorization of private

remedy, the remedy may nonetheless be implied and its form may be fashioned by the federal courts.

" 'When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions . . .' (*Sola Electric Co.* v. *Jefferson Co.,* 317 U.S. 173, 176 [87 L.Ed. 165, 168, 63 S.Ct. 172]). 'It is for the federal courts to "adjust their remedies so as to grant the necessary relief" where federally secured rights are invaded.' (*J. I. Case Co.* v. *Borak,* 377 U.S. 426, 433 [12 L.Ed.2d 423, 428, 84 S.Ct. 1555])." (See Note, *Implying Civil Remedies from Federal Regulatory Statutes* (1963) 77 Harv. L. Rev. 285, at p. 292.)

We agree.

At least one federal court has dealt directly with the subject upon facts closely analogous to those at bench and that court held that the Immigration and Nationality Act does not create a private cause of action in favor of farm workers against persons employing aliens (*Chavez* v. *Freshpict Foods, Inc.* (D.Colo. 1971) 322 F.Supp. 146).

*Testa* v. *Katt* (1947) 330 U.S. 386 [91 L.Ed. 967, 67 S.Ct. 810, 172 A.L.R. 225], cited and relied upon by appellants, is consistent with these conclusions. That case involves the Emergency Price Control Act, which expressly provided that the buyer may sue the seller "in any court of competent jurisdiction" and that federal district courts shall have jurisdiction of such suits "concurrently with State and Territorial Courts." Thus, the Emergency Price Control Act was not totally silent on the subject of a private penalty and/or remedy, as is the federal Immigration and Nationality Act here involved.

Since we have held that no cause of action for damages or for an injunction can be predicated upon the federal act, it is unnecessary to reach the difficult and challenging question of federal preemption which is postulated by reason of the exclusive and sovereign power of the federal government over immigration and aliens (*Knauff* v. *Shaughnessy* (1950) 338 U.S. 537, 542 [94 L.Ed. 317, 324, 70 S.Ct. 309, 312]) and its adoption of a comprehensive scheme of regulation and control over aliens and immigration (tit. 8, ch. XII, U.S.C.). A subsidiary question that is posed is whether, in any event, general federal action in this field would foreclose specific forms of state action even though consistent with federal immigration policy (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 573 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]; and compare *Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502, 507-508 [7 L.Ed.2d 483, 486-488, 82 S.Ct. 519, 522-523]; *San*

*Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 244-246 [3 L.Ed.2d 775, 782-784, 79 S.Ct. 773, 779-780]). We also do not reach the closely related question of whether, assuming the federal right is created, the state court has concurrent jurisdiction with the federal court over its enforcement (*Dowd Box Co.* v. *Courtney, supra,* 368 U.S. 502; *Zwickler* v. *Koota* (1967) 389 U.S. 241 [19 L.Ed.2d 444, 88 S.Ct. 391]; *Testa* v. *Katt, supra,* 330 U.S. 386; *McCarroll* v. *L.A. County etc. Carpenters* (1957) 49 Cal.2d 45, 57-61 [315 P.2d 322]).

█ Lastly, we pass to the contention that the complaint states a cause of action for damages based upon an unlawful interference with the plaintiffs' right to be employed. This is a novel assertion under the factual setting now before the court.

In substance, appellants claim that a prospective employee, "A," can sue and collect damages from employer "B" if employer "B" employs "C" for a particular job rather than "A," "C" being an alien and his employment by "B" being in violation of federal law.[4]

Appellants rely upon the common law principle stated in *Willis* v. *Santa Ana etc. Hospital Assn.* (1962) 58 Cal.2d 806, 810 [26 Cal.Rptr. 640, 376 P.2d 568]: "There is an established principle at common law that an action will lie where the right to pursue a lawful business, calling, trade, or occupation is intentionally interfered with either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. [Citations.]"

The plaintiff in the *Willis* case was an osteopath of the highest qualifications, who alleged that his membership on the hospital staffs of hospitals in the Santa Ana area of Orange County was terminated as a result of a conspiracy between the defendant hospital association and various named doctors designed to restrain competition and deprive the plaintiff of his practice in order to benefit competing members of the conspiracy. The court held that the plaintiff stated a cause of action under the common law theory above quoted.

Plaintiffs also cite and rely upon *Wilson* v. *Loew's Inc.* (1956) 142 Cal.App.2d 183 [298 P.2d 152]. In that case plaintiff, a script writer, sued

---

[4]The applicable federal law at the time expressly excluded from the definition of "harboring" the employment of aliens, and if the relationship between the employer and the alien was no more than simple employment, there could be no violation (see 8 U.S.C. § 1324). However, in view of the allegations of the complaint that the employment of illegal aliens was knowing and wilful, we must assume for the purpose of this decision that the employment of the aliens was an illegal act.

a number of motion picture producers, alleging a conspiracy among them not to employ persons such as plaintiff who had testified before the Un-American Activities Committee. The appellate court affirmed the action of the trial court in sustaining a general demurrer and dismissing the complaint. The court commented that plaintiff was attempting to allege a cause of action for wrongful interference with a future or prospective contract or business relationship. Plaintiff did not allege any present or existing contract of employment or that there was a certain or definite prospect that plaintiff would obtain employment. The court said that before such an action can be maintained ". . . it must appear that such contract or relationship would otherwise have been entered into." (P. 190.) Further, it said that a hope or expectation of employment is not enough. (See Rest., Torts, § 766, and coms. k and l.)

Except insofar as modified by statute or by private contract, an employer has no duty to hire any particular employee or group of employees. The employer is free to hire whom he pleases and the employee cannot be compelled to work for any particular employer (*Parkinson Co.* v. *Bldg. Trades Council* (1908) 154 Cal. 581, 598-599 [98 P. 1027]; 29 Cal.Jur. 2d, pp. 705-707). Thus, there is no common law duty resting upon the defendant employers to employ appellants rather than anyone else. It must be readily apparent, however, that this suit in essence is to compel the defendants to do exactly that, i.e., to hire appellants rather than others. It would appear that respondents could not interfere with a prospective employment relationship which they had no obligation to make and had not committed themselves to enter into.

At the time this action arose there had been no modification of this basic principle by statute[5] and appellants can find no comfort in the principles of either the *Willis* case or the *Wilson* case.

As in *Wilson,* the prospect of these appellants being employed by these respondents is not sufficiently certain to be supportive of a cause of action for interference with that alleged prospective relationship.

The *Willis* case basically is predicated upon allegations of an intentional and malicious conspiracy to deprive the plaintiff of the use of hospital facilities at which he could pursue his medical practice. No such contention or allegations are before the court in this case. Even if there were allegations of such a conspiracy, it would appear that the conspiratorial arrangement would have to exist between a sufficient number of employers so as to effectively deprive the plaintiffs of any opportunity to become employed in

[5]As heretofore pointed out, the 1971 Legislature passed Labor Code section 2805, which makes it a violation of law to employ illegal aliens.

their field. This case is against only two labor contractors and one employer. The entire association of motion picture producers was a party defendant in *Wilson,* where a like conspiracy was alleged, and in the *Willis* case the entire hospital association, presumably having a membership consisting of all the hospitals in the area, was a defendant, and the allegations were that the doctor was being excluded from all of the hospital staffs in the entire Santa Ana area. In the case at bench there are, of course, hundreds of employers not joined as defendants and with whom plaintiffs, from all that appears, could presumably gain employment.

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 30, 1972.